28 N.J. Super. 280 (1953)
100 A.2d 550
JOSEPH MAZZA, t/a TRAVELER'S HOTEL & RESTAURANT, APPELLANT,
v.
DOMINIC A. CAVICCHIA, DIRECTOR, DIVISION OF ALCOHOLIC BEVERAGE CONTROL OF NEW JERSEY, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 13, 1953.
Decided November 13, 1953.
*283 Before Judges EASTWOOD, JAYNE and FRANCIS.
Mr. Ralph W. Chandless argued the cause for the appellant (Messrs. Chandless, Weller & Kramer, attorneys).
Mr. Samuel B. Helfand, Deputy Attorney-General, argued the cause for the respondent (Mr. Theodore D. Parsons, Attorney-General of New Jersey).
The opinion of the court was delivered by FRANCIS, J.A.D.
Appellant challenges the validity of an order of the Director of the Division of Alcoholic Beverage Control which suspends his license to sell alcoholic beverages for a period of 180 days. The suspension was predicated on a finding that Mazza "allowed, permitted and suffered lewdness and immoral activity" on his premises in violation of Rule 5 of State Regulations No. 20; also that he "possessed, allowed, permitted and suffered the sale and distribution of prophylactics against venereal disease, and contraceptives and contraceptive devices" thereon in violation of Rule 9 of State Regulations No. 20.
Mazza operated the Traveler's Hotel & Restaurant, a two-story building on the Paterson Plank Road near Secaucus, N.J. The first floor contained a restaurant and a bar; the second floor, the hotel accommodations. Both businesses *284 were conducted by Mazza, and under the application for the beverage license the entire building constituted the licensed premises.
Without detailing the evidence, ample proof was presented to support the determination that the licensee's employees freely and brazenly rented rooms to the Division's agents for the ostensible purpose of enabling them to engage in illicit sexual intercourse; and further, that one of the employees sold them contraceptives to be used in connection therewith.
Mazza denied any knowledge that the rooms were rented or used for such illegal purposes or that contraceptives were sold by his employees. From this assertion the argument is made that unless it appears that the employees, in committing the illegal acts, were acting within the course and scope of their employment, the licensee cannot be found guilty. But the law is otherwise. The responsibility of the licensee is not dependent upon the doctrine of respondeat superior, nor upon his personal knowledge or intent or participation. Indeed, he is not relieved even if the violations were contrary to his express instructions. In re 17 Club, Inc., 26 N.J. Super. 43, 52 (App. Div. 1953); Greenbrier, Inc., v. Hock, 14 N.J. Super. 39, 43 (App. Div. 1951), certification denied 7 N.J. 581 (1951); In re Gutman, 21 N.J. Super. 579 (App. Div. 1952); In re Schneider, 12 N.J. Super. 449 (App. Div. 1951); Essex Holding Corp. v. Hock, 136 N.J.L. 28 (Sup. Ct. 1947); Grant Lunch Corp. v. Driscoll, 129 N.J.L. 408 (Sup. Ct. 1943), affirmed 130 N.J.L. 554 (E. & A. 1943), certiorari denied 320 U.S. 801, 64 S.Ct. 431, 88 L.Ed. 484 (1944).
Appellant contends that error was committed in admitting in evidence certain conversations between his two bartenders and respondent's agents on the night in question relating to the rooms and the nature of their use; also that it was error to admit the signed statement of one of the bartenders who did not appear as a witness. In this connection, it must be kept in mind that as an administrative agency respondent is not bound by the technical rules of *285 evidence and that the admission of incompetent testimony does not justify a reversal if there is sufficient competent proof in the record to support the determination. New Jersey Bell Telephone Co. v. Communications Workers, etc., 5 N.J. 354, 378 (1950); Borgia v. Board of Review, 21 N.J. Super. 462, 466 (App. Div. 1952). Assuming, therefore, but without deciding, that the conversations were inadmissible, and conceding that the written statement was improperly received, our examination of the proofs discloses adequate evidence on which the conclusion of the Director may be based. The final arrangements for the rental of the rooms were made with a waiter who, according to Mazza, was the person entrusted with that responsibility. And there is ample justification for the finding that the waiter knew of the purposed illicit use of the rooms and that he sold the contraceptives to the agents after the rental had been completed.
It appears also that this waiter was paid with bills bearing previously noted serial numbers, that he turned the money over to the bartender, and it was found in Mazza's cash register after the agents disclosed their identity.
Under the circumstances no prejudicial error was committed in receiving the criticized evidence. R.R. 1:5-3(b).
Stress is laid upon certain alleged lack of procedural due process in the conduct and hearing of the matter by the agency. Appellant points out that the basic issue was one of credibility and that the Director, who made the determination, neither saw nor heard the witnesses but reached his conclusion upon examination of a stenographic record compiled by a hearer designated for that purpose. And reference is made also to the fact that the Director reached his conclusion without an intermediate report or finding by the hearer and without a brief or oral argument from appellant.
At the outset of a consideration of this problem, cognizance must be taken of the provisions of the Alcoholic Beverage Law, N.J.S.A. 33:1-1 et seq., under which the Director is authorized to make "such general rules and regulations and such special rulings and findings as may be necessary for *286 the proper regulation and control of the manufacture, sale and distribution of alcoholic beverages and the enforcement of this chapter * * *." Then, after detailing certain subjects which may be covered by such rules and regulations, the section concludes:
"* * * and such other matters whatsoever as are or may become necessary in the fair, impartial, stringent and comprehensive administration of this chapter." (§ 39)
Section 31 confers upon the Director the power to suspend or revoke a license for violation of rules and regulations promulgated by him. And in connection with the hearing in a suspension or revocation proceeding, the Director may delegate his attorneys and legal assistants to examine under oath, on his behalf, "any and all persons whatsoever * * *." (§ 35)
The authority given to the Director by these two sections, of course, does not permit the delegation by him of the duty to decide the issue of revocation or suspension; it merely authorizes utilizing the services of one of the specified class of his assistants as a hearer for purposes of compiling the record. The precise question was considered in Horsman Dolls, Inc., v. State Unemployment Compensation Commission, 134 N.J.L. 77, 80, 81 (E. & A. 1945). There, the court said:
"It is contended by the Commission that by virtue of this grant of power under this section of the statute, the Commission has power to refer such matter to a referee or, as the brief describes such role, `a hearing officer' or `examiner' or `moderator'  without power of determination  as a mere compiler of a record  for the purposes of the agency, upon which it is not binding. We concur in this view, pointing out that there is no such office as `referee' mentioned, nomenclature, however, is not important. But conceding the power to appoint a `hearer' to `compile a record', there is not a vestige of authority conferred on the Commission by the statute to invest such appointee with power of decision as plainly was intended by the Commission when this matter was referred to Mr. Nowels. The Commission may make and promulgate rules within the power granted it in the statute, supra. Any power of decision invested in or exercised by such hearer, examiner or `referee' is ultra vires. With regard to a reference of a matter of this kind to a subordinate by the Commission or its Executive *287 Director, we think the Commission or its Executive Director may have the aid of assistants in the department. In the case of Morgan v. United States, 298 U.S. 468, at pages 481, et seq., 56 S.Ct. 906, 912, 80 L.Ed. 1288, passing on the administrative procedure, set out in the Packers and Stockyards Act of 1921, U.S.C.A., Title 7, § 181-229, where the Secretary of Agriculture is required to make the rate order, held that the official whose duty it is to make the rate must have heard or considered the evidence and the argument of the parties; that it is a duty akin to that of a judge; `that the one who decides must hear.' The opinion then says:
`This necessary rule does not preclude practicable administrative procedure in obtaining the aid of assistants in the department. Assistants may prosecute inquiries. Evidence may be taken by an examiner. Evidence thus taken may be sifted and analyzed by competent subordinates. Argument may be oral or written. The requirements are not technical. But there must be a hearing in a substantial sense and to give the substance of a hearing which is for the purpose of making determinations upon evidence, the officer who makes the determinations must consider and appraise the evidence which justifies them. That duty undoubtedly may be an onerous one, but the performance of it in a substantial manner is inseparable from the exercise of the important authority conferred. * * *'
If the Unemployment Compensation Commission requires the aid of its subordinate in hearing or compiling a record in a matter of the kind under consideration, there is no reason why it should not have such assistance, providing procedure such as is outlined above be followed and the evidence considered and argument heard by the agency which has power of decision  in this instance the Commission or its Executive Director. A fair and open hearing required by our law will countenance nothing less."
Appellant urges that where the critical issue is one of credibility, the requirements of due process are not served when the one who hears and sees the witnesses neither makes nor has power to make the decision. The objection is not new; it has been offered many times in the field of administrative law and the courts have declared that so long as the one who has the ultimate burden of decision, in fact makes his own independent study of the record and in fact makes the determination of the issue involved, a fair hearing in the sense of due process has been granted. Horsman Dolls, Inc., v. State Unemployment Compensation Commission, supra; In re Gutman, supra, p. 581; In re Larsen, 17 N.J. Super. 564 (App. Div. 1952); In re 17 Club, Inc., *288 supra, p. 48; 42 Am. Jur., Public Administrative Law, § 141, p. 484; Gellhorn, Administrative Law, p. 739 (1940). However, Mazza says that this asserted procedural deficiency is brought into sharp focus here because at the close of the hearing, the hearer simply said:
"The matter will be submitted to the Director for determination and all parties will be advised."
He points out that no statement was made to the effect that briefs might be filed or that oral argument might be had before the Director, or that the hearer would present an intermediate report of his conclusions to the Director.
At the oral argument on this appeal counsel for respondent informed us that under the agency practice, as a matter of course, leave is granted by the Director to file briefs or for oral argument, but that there is no officially and publicly promulgated general rule to that effect. We were told also that the hearer in fact files a report of his conclusions with the Director, although there is no official and public rule which requires it, and no notice of the submission of the report is given to the affected licensee.
We do not think this deficiency, of itself, marks a departure from the strictures of the Constitution, especially where, as here, the exhaustive memorandum of the Director notes that he "examined and reexamined the entire record" and became "convinced that the violations were committed as charged * * *." However, it must be kept in mind that under the Alcoholic Beverage Law, the Director has concentrated in him the functions of investigating, prosecuting and judging the guilt of alleged violators of the enactment and of his own rules and regulations. This trilateral function calls for a deep understanding of and a real sensitivity for the right of an accused to a full and fair hearing. In re Larsen, supra. Accordingly we think that where there is no public rule which gives notice that briefs may be filed and that oral argument may be had before the Director, or any rule, public or intra-agency, which requires the hearer to make such announcement at the close *289 of the taking of the testimony, due caution must be exercised by the courts in reviewing the factual findings of the Director  particularly where the issue turns on credibility.
This does not mean that the courts should undertake generally to exercise the authority expressed in R.R. 1:5-3, 2:5 to make an independent determination of the facts. The authority conferred thereby should be marked by the rarity and caution of its exercise, for, as the Director contends, if we undertook to review the weight of the evidence in these cases, his agency would be reduced to the status of a mere conduit for the transmission of evidence to the courts. In this connection it has been suggested that since these rules require an appellate court, in making independent findings, to give "due regard to the opportunity of the trial court to judge the credibility of the witnesses," the Supreme Court has recognized that the conclusion of a trial court is entitled to more weight when he has seen and heard the witnesses than when such opportunity has not been afforded. So it is said that a more compelling reason for restudy of the weight of the evidence exists here because the Director neither heard nor saw the witnesses. Despite this lack, which is not an uncommon one in modern administrative procedure, the test, which has judicial sanction for general application to the review of an administrative tribunal's decision, is whether the factual finding, out of which it arose, is supported by substantial evidence. New Jersey Bell Telephone Co. v. Communications Workers, etc., supra; In re Larsen, supra. In our judgment, this test is a sound one and the caution above referred to does not mean a departure therefrom. It signifies the care that will be exercised by the courts in determining whether the record provides substantial evidence of the licensee's guilt.
In the review of the record, we have been guided by the considerations outlined and, as already indicated, have found the conclusion of the Director to be supported by substantial evidence.
Accordingly, the order suspending appellant's license is affirmed.