85 N.J. Super. 297 (1964)
204 A.2d 609
HARRY R. D'AMICO AND CATHERINE D'AMICO, TRADING AS D'AMICO LIQUOR STORE, APPELLANTS,
v.
HORACE W. BLANCK, ETC., ET AL., RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 26, 1964.
Decided November 2, 1964.
*299 Before Judges GOLDMANN, SULLIVAN and LABRECQUE.
Mr. Norman Heine argued the cause for appellants (Mr. Samuel P. Orlando, attorney).
Mr. Grover C. Richman, Jr. argued the cause for respondents (Messrs. Richman, Berry & Ferren, attorneys).
Mr. Samuel B. Helfand, Deputy Attorney General, argued the cause for the Division of Alcoholic Beverage Control (Mr. Arthur J. Sills, Attorney General, attorney).
*300 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
This is an appeal from an order of the Acting Director of the Division of Alcoholic Beverage Control concurring in and adopting the report and conclusions of the Division hearer and ordering that the action of respondent council of the Borough of Magnolia in granting a plenary retail distribution license and renewals thereof to appellants D'Amico under an ordinance adopted on October 5, 1960 be reversed, and that the current license granted pursuant thereto be cancelled, effective immediately. We stayed the order pending determination of the appeal.
Much of the factual background of this case may be found in Blanck v. Mayor, etc., of Magnolia, 73 N.J. Super. 306 (App. Div. 1962), and in the opinion of the Supreme Court reversing and remanding the matter to the Division for action not inconsistent with its opinion, 38 N.J. 484 (1962). Briefly, the borough council, on October 5, 1960, had adopted an amendatory liquor ordinance providing for a plenary retail distribution license, and on November 7, 1960 issued such license to the D'Amicos. The Blancks appealed to the Director of the Division of Alcoholic Beverage Control and asked that he declare the amendatory ordinance void because of Mr. D'Amico's self-interest by reason of his being president of the borough council at the time the ordinance was adopted. The Director concluded that the evidence did not support that charge, and he found other claims of error asserted by the Blancks to be without merit.
On appeal to this court, they again contended that the amendatory ordinance was invalid because D'Amico, as council president at the time the amendment was adopted, had a personal and financial interest which conflicted with his public duty. On review we held (73 N.J. Super. 306) that the amendatory ordinance could be directly attacked only by a plenary court action and a judicial ruling as to its invalidity, and that the Director did not have the power to make such a ruling. Accordingly, the court declined to rule as to D'Amico's alleged self-interest or its effect on the amendatory ordinance. *301 It concluded there was substantial evidence to support the Director's determination that the borough council had not abused discretion in issuing the license to the D'Amicos, nor did it appear that council's action was arbitrary or unreasonable.
The Blancks then sought and obtained certification to the Supreme Court, which said that a fair reading of the Alcoholic Beverage Control Law compelled the conclusion that
"* * * where a member of a local body is interested in obtaining a license and an ordinance creating and authorizing such license is introduced and passed, and thereafter such member resigns and the license is issued to him, the Director should closely scrutinize the entire transaction to determine (1) whether the ordinance was adopted in the public interest or to favor the member, and (2) whether, as an original proposition, the license should be issued to the former official rather than a competing applicant. This, we think, is required to satisfy the legislative aim that the Director exercise a broad supervisory power in this delicate area. * * *" (38 N.J., at pages 494-5)
It went on to say:
"In our view the Director should have taken petitioners' appeal and molded it as if it were a direct application by the D'Amicos for a license. He would have had before him the competing applicant, Myers [sic], and could have then decided all the issues. He would have made a determination as to whether public welfare or favoritism was the basis for enacting the ordinance. If he found public welfare, he would have then considered the relative merits of the two applications. If he found that the amendment was passed for a reason not permitted by the Legislature, he would not have granted a license to either applicant. Cf. Board of Commissioners of the Town of Phillipsburg v. Burnett, 125 N.J.L. 157 (Sup. Ct. 1940). Nevertheless, the power he would exercise would be in the nature of an issuing authority (such as he exercises under R.S. 33:1-20) rather than an appellate one." (at pages 495-6)
What the Supreme Court said was the law of the case on the remand. After a full hearing the Division hearer, in his report, stated that his examination and analysis of the testimony led him to the "inescapable conclusion * * * that the ordinance in question was adopted in favor of D'Amico and for his sole benefit." The borough council had acted in a legislative *302 capacity when it adopted the amendatory ordinance, but its granting of the liquor license involved an act judicial in nature. In his view, "the standards of disqualifying interest can be no less exacting with respect to such body acting as a liquor license issuing authority than in the case of purely judicial action." The Blancks, he held, had established by a fair preponderance of the evidence that the amendatory ordinance was adopted to favor D'Amico, and he accordingly recommended to the Acting Director that an order be entered determining that the action of the borough council in granting the license and renewals thereof under that ordinance to D'Amico be reversed and the current license cancelled. In view of that determination, the hearer found it unnecessary to consider the other point raised by the Supreme Court in its order of remand, namely, the relative merits of the D'Amico and Meyers applications.
After carefully considering the evidence and exhibits, the hearer's report, the memoranda submitted by counsel at the conclusion of the hearings, the written exceptions of the D'Amicos and the answers of the Blancks thereto, the Acting Director, as already noted, concurred in the hearer's conclusions (as corrected with respect to certain inaccurate statements relating to nonmaterial facts), adopted them, and entered the order under appeal.
Appellants complain that the Acting Director's conclusions and order show that he failed to consider what are described as "the controlling factors" in the case, and that his factual findings are not supported by substantial evidence. We have reviewed the entire record and are convinced that there was substantial evidence to support the Acting Director's determination that the enactment of the 1960 amendment to Magnolia's liquor ordinance was the product of favoritism to Council President D'Amico. Atkinson v. Parsekian, 37 N.J. 143, 149 (1962); Murphy's Tavern, Inc. v. Davis, 70 N.J. Super. 87, 94 (App. Div. 1961); Hornauer v. Division of Alcoholic Beverage Control, 40 N.J. Super. 501, 504 (App. Div. 1956).
*303 Under this first point, appellants list some 19 facts in the record which allegedly could support a determination by the Acting Director that the amendatory ordinance was not adopted to favor D'Amico. However, the test is not to show conflicting evidence, but to examine the record to ascertain whether there is substantial evidence upon which he could have based his determination. As we said in Hornauer, at page 506, the choice of accepting or rejecting the testimony of witnesses rests with the administrative agency, and where such choice is reasonably made, it is conclusive on appeal. We canvass the record, not to balance the persuasiveness of the evidence on one side as against the other, but in order to determine whether a reasonable mind might accept the evidence as adequate to support the conclusion and, if so, to sustain it.
The conclusion we reach would not be changed even were we to accept the 19 facts as true (we find many of them not pertinent or significant), for our careful examination of the uncontroverted facts in the record convinces us that they would fully support the determination made by the Acting Director.
In connection with the substantial evidence argument, appellants claim that the hearer permitted certain testimony which was not admissible under existing rules of evidence. The settled principle is that an administrative agency is not bound by the technical rules of evidence, and the admission of allegedly incompetent testimony does not justify a reversal if there is sufficient competent proof in the record  and we find there is  to support the determination. Mazza v. Cavicchia, 28 N.J. Super. 280, 284-5 (App. Div. 1953), reversed on another ground 15 N.J. 498 (1954), where the Supreme Court expressly approved the rule just stated (at page 509).
Appellants complain that the Acting Director made no finding that the amendatory ordinance had not been adopted in the public interest. This, they say, had to be decided before he could deal with the question of whether it had been adopted to favor D'Amico. The logic of this argument escapes us. The Supreme Court mandate posed for resolution by the Acting *304 Director the question of whether "public welfare or favoritism was the basis for enacting the ordinance," and if he found the latter, the license would not be granted to either applicant. The Acting Director, after a comprehensive examination of the proofs, found that they conclusively established that favoritism was the prime motive for the ordinance; it had been adopted for D'Amico's "sole benefit." That finding was enough to resolve the question put by the Supreme Court, for it clearly eliminated public welfare as the reason for the borough council acting as it did.
Appellants' second contention is that the Acting Director erred in his application of the so-called "conflict of interest" cases. The short answer to this is that the Supreme Court remanded the matter to the Acting Director "for action not inconsistent with this opinion." Reference to the second quoted part of that opinion, above, makes clear that the Acting Director was called upon to make "a determination as to whether public welfare or favoritism was the basis for enacting the [amendatory] ordinance," and if he found it was passed for a reason not permitted by the Legislature, "he would not have granted a license to either applicant." Blanck v. Mayor, etc., of Magnolia, above, 38 N.J., at pages 495-6. The power of the Division to act through its Acting Director, and the extent of that power, were prescribed and delineated by the Supreme Court's mandate on remand. Its judgment, as we have said, became the law of the case, and the agency was under a peremptory duty not to depart from it. Lowenstein v. Newark Board of Education, 35 N.J. 94, 116-117 (1961).
We hold that the Acting Director executed the mandate given him, and his reference to the "conflict of interest" cases did not in any way diminish the force of his ultimate conclusion, based as it was on substantial and convincing evidence.
Finally, appellants claim that the Acting Director's refusal to allow oral argument constituted a denial of due process. They allege that oral argument is an indispensable step to a fair hearing because it might well induce an administrative *305 agency to make a finding contrary to the one it would make without such argument.
We start with the proposition that absent specific legislative direction, "administrative tribunals may mold their own procedures so long as they operate fairly and conform with due process principles." Laba v. Newark Board of Education, 23 N.J. 364, 382 (1957). In In re 17 Club, Inc., 26 N.J. Super. 43 (1953), a case involving the Division of Alcoholic Beverage Control, we had occasion to say that
"While statutes creating an administrative agent or body quite uniformly confer upon the agent or body the power to prescribe rules of practice and procedure to govern the proceedings before them, yet we have little, if any, doubt of the implied power of such agencies to adopt any fair and reasonable practice and procedure conducive to the ascertainment of the facts upon which the agency is authorized to decide and act and which will promote the ends of justice in the administration and effectuation of the statutory purpose. * * *" (at page 48)
The Legislature has empowered the Director of Alcoholic Beverage Control "to establish procedure and rules." R.S. 33:1-38. Pursuant to that authority, he promulgated Rule 14 of State Regulation No. 15 which, in pertinent part, reads:
"* * * Each party * * * shall have the right to present his case by oral and documentary evidence and to conduct such cross-examination as may be required for a full and true disclosure of the facts. * * * Each party shall be afforded the opportunity to present argument, either orally before the hearer immediately upon the close of the evidence, or by written brief. Oral argument shall be limited to fifteen (15) minutes for each party, unless the hearer shall otherwise order. * * * Within ten (10) days of the receipt of the report, each party may file written exceptions and argument with the Director * * *. Within five (5) days * * * answering argument may be filed with the Director * * *. Except as otherwise provided herein, no oral argument may be had before the Director unless, on his own motion, the Director decides to hear oral argument * * *.
* * * no material change in the result recommended by the hearer shall be made by the Director without first affording the parties or their attorneys an opportunity to present oral argument before the Director. * * *" (Italics ours)
*306 Following the coming down of the Supreme Court's mandate in this case, the Division hearer conducted a lengthy hearing. At its conclusion, counsel were afforded an opportunity for oral argument before the hearer. However, it was agreed that written briefs would be submitted, and they were. After the hearer rendered his report, appellants' counsel filed exceptions, together with a 20-page brief which reviewed the evidence in detail and projected the factual arguments renewed on this appeal. Counsel also requested that he be permitted to argue the matter orally. The Acting Director denied the request, stating that oral argument was "deemed unnecessary and unwarranted" in the light of what we have just recited.
In support of their claim that they were entitled to oral argument as a matter of right, appellants refer us to State v. Milwaukee, 157 Wis. 505, 147 N.W. 50, a 1914 case wherein the Wisconsin Supreme Court, in discussing the elements of a "common-law hearing," said that the word "hearing" includes oral argument. The relator in that case challenged his removal from municipal office by the common council, only 5 of whose 37 members had heard the witnesses. The court held that in such a setting it was prejudicial to deny oral argument. Milwaukee was followed in Wisconsin Telephone Co. v. Public Service Comm'n, 232 Wis. 274, 287 N.W. 122 (Sup. Ct. 1939), rehearing denied 232 Wis. 368, 287 N.W. 593 (Sup. Ct. 1939), certiorari denied 309 U.S. 657, 60 S.Ct. 514, 84 L.Ed. 1006 (1940). Defendant commission had there fixed a rate prior to the submission of any testimony by the utility, and the court set the rate aside because the utility had not been afforded the formal hearing required by statute.
Appellants also rely on Londoner v. Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908), a Colorado tax assessment case. The court said that due process required that at some stage of the proceedings, and before the tax became irrevocably fixed, a taxpayer should have an opportunity to be heard, upon notice given. This embraces more than the right merely to submit written objections and complaints to *307 the tax board; a hearing "in its very essence demands that he who is entitled to it shall have a right to support his allegations by argument however brief, and if need be, by proof, however informal." (210 U.S., at pages 385-6, 28 S.Ct., at page 714.)
In Londoner the property owners were given no opportunity to be heard other than by submitting written objections. The case is therefore completely distinguishable from the present one, where a full trial-type hearing was conducted, counsel afforded an opportunity to argue before the hearer (as we have seen, they chose to present the matter on briefs), and after the hearer had filed his report, appellants filed exceptions and a comprehensive brief.
In Morgan v. United States, 298 U.S. 468, 56 S.Ct. 906, 80 L.Ed. 1288 (1935), a leading case in administrative law, the court considered the kind of administrative hearing required under the Packers and Stockyards Act, 42 Stat. 159, 7 U.S.C.A. 181 (1935). Chief Justice Hughes, writing for a unanimous court, said there must be a full hearing and evidence adequate to support pertinent and necessary findings of fact; the facts and circumstances which ought to be considered must not be excluded, and those which should not legally influence the conclusion must not be considered; and the findings based on the evidence must embrace the basic facts needed to sustain the order.
The Chief Justice went on to say that where, as a matter of practical administrative procedure, the aid of assistants (examiners) is authorized, an examiner may take the evidence and sift and analyze it. "Arguments may be oral or written. The requirements are not technical. But there must be a hearing in a substantial sense." (298 U.S., at page 481, 56 S.Ct., at page 912)
We consider Morgan as a later and more carefully considered expression of proper administrative procedure than Londoner, decided at a time (1908) when administrative law was just emerging in this country. That case was distinguished and commented on in N.L.R.B. v. Allied Distributing Corp., *308 297 F.2d 679 (10 Cir. 1961). The employers there had been charged with unfair labor practices. There had been a full hearing before an examiner, review of his report by the National Labor Relations Board upon exceptions and briefs, and enforcement proceedings in court. The court held that the employers had not been denied procedural due process because the Board had denied their request for oral argument. It said:
"* * * In declining to hear oral argument the Board stated that `the record, exceptions, and brief adequately present the positions of the parties.' The statute provides that, after evidence is taken at hearing on charges of unfair labor practices and after a written transcript thereof is filed with the Board, it may `in its discretion * * * hear argument.' * * *
The Supreme Court has not interpreted the Fifth Amendment as guaranteeing any particular form of procedure. Here, the statute has left the grant or denial of oral argument to the discretion of the Board. Londoner v. City & County of Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103, is not in point. That case involved tax assessment proceedings in which the objectors were not given an opportunity to be heard other than by the submission of their objections in writing and there was no right of court review. In the instant case there was a full hearing before the examiner, review of his report by the Board upon exceptions and briefs, and the instant enforcement proceedings in this court. As we see it, the statutory procedure for determining and deterring unfair labor practices meets all the requirements of due process and the Board did not abuse the discretion given it to hear, or refuse to hear, oral argument." (at pages 680-681)
A similar claim of denial of due process because of the refusal to allow oral argument on exceptions to the trial examiner's report was made in N.L.R.B. v. Clausen, 188 F.2d 439 (3 Cir. 1951), certiorari denied 342 U.S. 868, 72 S.Ct. 108, 96 L.Ed. 653 (1951), where the court held:
"There is no merit to this contention. As was said by the Supreme Court with respect to a similar administrative hearing * * * in Morgan v. United States, 298 U.S. 468 [56 S.Ct. 906], * * * `Argument may be oral or written. The requirements are not technical.' When the Morgan case was again before the Supreme Court, 304 U.S. 1 [58 S.Ct. 773, 999, 82 L.Ed. 1129], * * * Chief Justice Hughes stressed that the all important element for such administrative proceedings is that there be a full, fair and adequate hearing. * * * The allowance of oral argument to exceptions to *309 a Trial Examiner's report is, by the Board's Rules and Regulations * * * within the discretion of the Board. * * * Respondent did file a brief in support of her exceptions and the Board * * * denied the request for oral argument `* * * because the record, exceptions and brief, in our opinion, adequately present the issues and positions of the parties.' There is not the slightest indication of any abuse of discretion in this action by the Board." (188 F.2d, at page 444)
Appellants claim that the Morgan case was modified by WJR v. Federal Communications Comm'n, 84 U.S. App. D.C. 1, 174 F.2d 226 (D.C. Cir. 1947), reversed and remanded Federal Communications Comm'n v. WJR, 337 U.S. 265, 69 S.Ct. 1097, 93 L.Ed. 1353 (1949). A bare majority of the lower court (the vote was 3-2) had held that due process, as guaranteed by the Fifth Amendment, required a hearing, "including an opportunity to make oral argument," on every question of law raised before a judicial or quasi-judicial tribunal. However, the Supreme Court held that the lower court's broad constitutional ruling could not be sustained, for "it would require oral argument upon every question of law, apart from excluded interlocutory matters, arising in administrative proceedings of every sort"  and this "regardless of whether the legal question were substantial or insubstantial; of the substantive nature of the asserted right or interest involved; of whether Congress had provided a procedure, relating to the particular interest, requiring oral argument or allowing it to be dispensed with; and regardless of the fact that full opportunity for judicial review may be available." (337 U.S., at pages 274-5, 69 S.Ct., at page 1103.) Said the court:
"* * * It is enough to say that due process of law, as conceived by the Fifth Amendment, has never been cast in so rigid and all-inclusive confinement.
On the contrary, due process of law has never been a term of fixed and invariable content. This is as true with reference to oral argument as with respect to other elements of procedural due process. For this Court has held in some situations that such argument is essential to a fair hearing, Londoner v. Denver, 210 U.S. 373 [28 S.Ct. 708], in others that argument submitted in writing is sufficient. Morgan v. United States, 298 U.S. 468, 481 [56 S.Ct. 906]. * * *
*310 The decisions cited are sufficient to show that the broad generalization made by the Court of Appeals is not the law. Rather, it is in conflict with this Court's rulings, in effect, that the right of oral argument as a matter of procedural due process varies from case to case in accordance with differing circumstances, as do other procedural regulations. Certainly the Constitution does not require oral argument in all cases where only insubstantial or frivolous questions of law, or indeed even substantial ones, are raised. * * *
Without in any sense discounting the value of oral argument wherever it may be appropriate or, by virtue of the particular circumstances, constitutionally required, we cannot accept the broad formula upon which the Court of Appeals rested its ruling." (337 U.S., at pages 275-6, 69 S.Ct., at page 1103)
The court said it would not undertake to "generalize more broadly than the particular circumstances require upon when and under what circumstances procedural due process might require oral argument." Rather, it was a matter for case-to-case determination. (at page 277, 69 S.Ct., at page 1104) Cf. Gonzales v. United States, 364 U.S. 59, 80 S.Ct. 1554, 4 L.Ed.2d 1569 (1960); Dyke Water Co. v. Public Utilities Comm'n, 56 Cal.2d 105, 14 Cal. Rptr. 310, 363 P.2d 326 (Sup. Ct. 1961), certiorari denied 368 U.S. 939, 82 S.Ct. 380, 7 L.Ed.2d 338 (1961).
Davis, in his treatise on Administrative Law, § 7.07 (treating of the question as to when an argument-type hearing is required), comments that the Supreme Court in the WJR case did little to clarify the law, for it offered no useful guide to determine in what circumstances, if any, due process required opportunity for oral argument. (at page 435)
We conclude that appellants were not denied due process in the circumstances of this case. We again note that they were afforded a full-scale hearing, the opportunity of orally arguing the case before the hearer (they filed a brief instead), and the right to file exceptions accompanied by a comprehensive legal memorandum. In denying appellants' request for oral argument because he considered it unnecessary and unwarranted, the Acting Director was following out Rule 14 of State Regulation No. 15, earlier quoted, promulgated pursuant to the authority given in R.S. 33:1-38.
*311 In Mazza v. Cavicchia, above, 15 N.J. 498 (1954), a case which arose prior to the adoption of Rule 14 just mentioned, appellant objected to the lack of a Division rule permitting a licensee to file a brief or present oral argument before the Director after the taking of testimony before the hearer on charges against him. As a matter of fact, appellant had requested permission to file a brief and had done so. However, there was no oral argument. The crucial issue before the court involved "the elemental due process requirement that the hearing be fairly conducted." (at page 526) In dismissing appellant's contention, the court said that he was in no position to complain of the lack of a rule, for leave had been given him to file a brief. It is a fair conclusion that had the court considered oral argument necessary, it would not have recognized the written brief as meeting the due process requirement.
Accordingly, we specifically hold that in an administrative setting such as this case presents, due process does not require the granting of permission for oral argument.
Affirmed.