239 N.J. Super. 1 (1989)
570 A.2d 988
JACK MOISEYEV, APPELLANT,
v.
NEW JERSEY RACING COMMISSION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 13, 1989.
Decided June 28, 1989.
*3 Before Judges DREIER, HAVEY and BROCHIN.
Michael D. Schottland argued the cause for appellant (Chamlin, Schottland, Rosen, Cavanagh & Uliano, attorneys, Michael D. Schottland, of counsel, Lee Emmer, on the brief).
Craig J. Huber, Deputy Attorney General argued the cause for respondent (Peter N. Perretti, Jr., Attorney General of New Jersey, attorney, Mary Jacobson, Deputy Attorney General, of counsel; Craig J. Huber, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
*4 Plaintiff, Jack Moiseyev, a harness driver, appeals from a decision of the New Jersey Racing Commission suspending his harness driver's license for a period of 30 days for an alleged violation of N.J.A.C. 13:71-20.10(b). He here claims that the regulation was unconstitutionally vague; that there was an insufficient basis for the Commission's conclusions that he violated the regulations; that the earlier hearings, prior to the submission of the matter to an administrative law judge, violated plaintiff's due process rights; and that the 30-day suspension was an unwarranted punishment for the alleged breach. With the exception of plaintiff's arguments concerning the length of the suspension, we find the points he raises to be unavailing.
On August 22, 1987, plaintiff drove a horse named Righteous Bucks in the tenth race at Freehold Raceway. The horse was one of six in the race and was favored to win, but finished third. The presiding race judge that day, Peter Virag, directed that plaintiff be cited to appear before the Freehold Raceway's Board of Stewards, as Virag felt plaintiff had shown "bad judgment" during the ride.
A jockey's conduct during a race is governed by N.J.A.C. 13:71-20.10. Subsection (a) regulates fraud or a "fixed" race; plaintiff was not charged under that subsection. Subsection (b), however, provides:
In the event a drive is unsatisfactory due to lack of effort, carelessness, misjudgment, or demonstrated lack of judgment in performance, and the judges believe that there is no fraud, gross carelessness, or a deliberate inconsistent drive, they [the race judges] may impose a penalty [similar to those available in subsection (a)] under this subsection.
The Raceway Board of Stewards determined that plaintiff violated this section in that his drive had been "unsatisfactory due to lack of effort, carelessness, misjudgment or demonstrated lack of judgment in performance," and imposed a 30-day suspension. Plaintiff then appealed to the State Steward who, after a two-day hearing, upheld the decision and reimposed the *5 30-day suspension. Plaintiff thereupon appealed to the New Jersey Racing Commission, which assigned the matter for a hearing de novo before an administrative law judge.
At the administrative hearing, the judge took substantial testimony, principally from plaintiff, his experts, Mr. Virag, and the State Steward. The judge also viewed a videotape of the race. Plaintiff explained that the horse had not acted right and he was afraid the horse would "break if I pushed him and there's a guy right on my back. I would have caused a crash." He insisted that he had been trying to win, but the horse had difficulty with the last turn, and therefore was unable to gain the lead. Plaintiff further claimed that the horse had physical problems at the time, and in fact was treated the next day by a veterinarian. Since the horse was entered in a substantial stakes race the next week, the trainer had instructed plaintiff "not to abuse the horse" (in the owner's words) or to "try not to rough him up too much" (in plaintiff's words). The track judge, however, pointed out specifically where plaintiff should have given more effort, and the State Steward similarly testified and characterized plaintiff as having exercised "very poor judgment" in the way the race was run.
Plaintiff initially contends that the regulation under which the penalty was assessed is unconstitutionally vague, both on its face and as applied to him. Of the four possible charges that could have been levied against the plaintiff (lack of effort, carelessness, misjudgment, or demonstrated lack of judgment in performance), plaintiff was suspended only for "lack of effort," i.e., "lack of effort in getting after the horse." Plaintiff contends that this term vests unfettered discretion in the Racing Commission, and fails to give drivers sufficient notice of the interdicted conduct. Furthermore, plaintiff claims that a reviewing court has "no objective standard by which it can determine whether in fact a violation has occurred."
The Supreme Court has stated that the test for facial invalidity is whether the language is "so vague that a person of *6 ordinary intelligence is unable to discern what it requires, prohibits, or punishes." Brown v. Newark, 113 N.J. 565, 572-573, 552 A.2d 125 (1989). The regulation must inform those whom it regulates as to what conduct is prohibited. N.J. Ass'n Health Care Facilities v. Finley, 83 N.J. 67, 82, 415 A.2d 1147 (1980), app. dism. and cert. den. 449 U.S. 944, 101 S.Ct. 342, 66 L.Ed.2d 208 (1980). While plaintiff also has attacked the ordinance as vague as applied in his case, his facial vagueness test requires that the regulation be defective in all possible applications. State v. Cameron 100 N.J. 586, 593, 498 A.2d 1217 (1985) ("[T]here is no conduct that it proscribes with sufficient certainty.")
The applied vagueness test requires that the regulation fails to proscribe clearly the conduct against which it is being enforced in the matter before the court. Ibid. However, allegedly vague terminology may derive meaning from the law's overall objective and "the potential evil and mischief which the Legislature sought to regulate and eradicate." In re Berardi, 23 N.J. 485, 492-493, 129 A.2d 705 (1957). In particular, in the area of occupational restrictions, any imprecision in drafting must be assessed with a recognition that the governing body of the occupation or profession is uniquely qualified to assess the meaning of the language. In re Polk License Revocation, 90 N.J. 550, 575, 449 A.2d 7 (1982). Furthermore, as the regulation before us imposes no penal sanctions, but rather only civil or economic consequences, less definitional clarity is required. State v. Cameron, supra, 100 N.J. at 592, 498 A.2d 1217.
We further understand plaintiff's argument to be that since he was not charged with any intentionally inadequate performance (governed by N.J.A.C. 13:71-20.10(a)), he in effect was being charged for lack of ability where he had no dishonest motive. In baseball terms, such a regulation would permit the suspension of a player for striking out too much or of a pitcher for giving up too many hits. He claims that no administrative *7 body can determine whether poor performance is caused by "lack of effort" or "misjudgment", as opposed to lack of ability.
Recognizing the superficial appeal of such an argument, we must view the regulation in the context of the racing industry. In context, the subjective evaluation of the driver's effort is not an infirmity in the regulation. We have upheld the strict and close regulation of the racing industry; we recognize and give deference to the Racing Commission's expertise. See De Vitis v. New Jersey Racing Com'n, 202 N.J. Super. 484, 490-491, 495 A.2d 457 (App.Div. 1985), certif. den. 102 N.J. 337, 508 A.2d 213 (1985), and the cases there cited. We understand that the overriding goal in the regulations is to insure the public's confidence in the integrity of horse racing. Dare v. State, 159 N.J. Super. 533, 537, 388 A.2d 984 (App.Div. 1978).
Such an analysis is not limited to the racing industry. It similarly has been applied to casino gambling, medical care, and other areas of endeavor. In all of these areas we have deferred to the agency's superior ability to define and implement what otherwise might be considered imprecise standards of behavior. In De Vitis, supra, we upheld a ten-day suspension under the very regulation attacked here, although the constitutionality of the regulation was not there challenged. In De Vitis the driver also was suspended for "lack of effort." De Vitis, supra at 492, 495 A.2d 457. Cf. State Dept. of Law & Public Safety v. Merlino, 216 N.J. Super. 579, 585-586, 524 A.2d 821 (App.Div. 1987), aff'd o.b. 109 N.J. 134, 535 A.2d 968 (1988) (casino industry); In re Boardwalk Regency Casino License Application, 180 N.J. Super. 324, 434 A.2d 1111 (App.Div. 1981), aff'd as mod. 90 N.J. 361, 447 A.2d 1335 (1982), app. dism. 459 U.S. 1981, 103 S.Ct. 562, 74 L.Ed.2d 927 (1982) (casino industry); In re Polk License Revocation, supra, 90 N.J. at 575, 449 A.2d 7 (physician's licensing); In re Com'r of Banking v. Parkwood Co., 98 N.J. Super. 263, 237 A.2d 265 (App.Div. 1967) (insurance broker licensing).
*8 In the case before us a reading of the testimony of the State Steward and Mr. Varig, experts in judging horse racing, demonstrates that the lapses encompassed in the broad term "lack of effort" have observable signs, perhaps recognizable only to the initiated, and thus the decision was not wholly subjective. While members of this court may not know whether the failure to whip a horse at an expected point on the course or the failure to take a lead position over a horse not known to be a front-runner demonstrates "lack of effort," we understand that to an expert in the field such observations may constitute objective standards for evaluation. We recognize the vulnerability of harness racing to manipulation, and the Legislature's choice to grant the Commission pervasive powers, including the power to detect and punish "unsatisfactory" drives as well as those which might be fraudulent. The failure of a driver to make an expected move might well be perceived by the betting public as indicative of poor effort, fostering suspicions of fraud, even where there may be none. The Commission thus must be diligent in controlling all aspects of the sport, and a regulation such as N.J.A.C. 13:71-20.10(b) is therefore not void for vagueness either on its face or as applied here.
Plaintiff next claims that his due process rights were violated in the initial hearings before the Board of Judges and the State Steward. Plaintiff points out that as an attorney for another driver was excluded from a hearing, an aura of hostility pervaded the hearing; stays were initially denied to plaintiff and had to be secured by a temporary injunction issued by a Law Division judge. Other examples are given, including the alleged intrusion of the Racing Commission into the decision-making process before the State Steward. Yet all such claims may be answered by the fact that there was a trial de novo granted before the administrative law judge.
Although the transcripts of the earlier testimony were available for impeachment if the same witness appeared in the hearing before the administrative law judge, the initial findings were expressly disregarded by the administrative law judge *9 who relied exclusively upon the evidence presented before him. The State Steward and presiding track judge were merely witnesses, with their credibility duly assessed by the administrative law judge. Cf. In re Logan, 71 N.J. 583, 586, 367 A.2d 419 (1976) (involving an attorney's complaint of due process violations in an Ethics Committee hearing when the Supreme Court itself made a de novo assessment of the charges). Insofar as plaintiff's claims may be understood to be a challenge to the Racing Commission's authority to review the administrative law judge's decision after the Commission had expressed some opinion in the case during earlier stages, see In the Matter of Carberry, 114 N.J. 574, 584-586, 556 A.2d 314 (1989).
Plaintiff also complains that a portion of the earlier testimony was excluded by the administrative law judge. Plaintiff contends that the earlier proceedings had been so tainted that a full reading of a transcript of these proceedings would have impugned the motives and integrity of the track judges and Steward in the earlier proceedings. We do not here rule that in the proceedings before the administrative law judge the earlier transcripts were inadmissible. See N.J.S.A. 52:14B-10(a). However, the ruling to exclude the transcripts appears to us to have been within the discretion of the administrative law judge, so long as plaintiff was able to use prior inconsistent statements in his cross-examination of the witnesses appearing before the administrative law judge and other evidence indicating any witness' bias or interest in the case. From the evidence presented and arguments of counsel, the administrative law judge had before him the full flavor of the earlier administrative proceeding; but, more importantly, the administrative law judge had before him the evidence of the sole issue to be decided, plaintiff's efforts during the race in question.
Plaintiff also contends that his attorney had not been given notice of the filing of the State's exceptions to the administrative law judge's recommended decision, and that these exceptions were considered at a meeting of the Commission *10 without notice to plaintiff, preventing his counsel from appearing and arguing. However, under N.J.A.C. 1:1-18.4(a), a party to an administrative law proceeding being reviewed by an agency head has a right to be heard by written exceptions only. Due process is satisfied if there has been a "full and fair hearing" before the administrative law judge. De Vitis, supra, 202 N.J. Super. at 501, 495 A.2d 457. See also Niglio v. New Jersey Racing Commission, 158 N.J. Super. 182, 189-190, 385 A.2d 925 (App.Div. 1978); D'Amico v. Blanck, 85 N.J. Super. 297, 310, 204 A.2d 609 (App.Div. 1964), certif. den. 43 N.J. 448, 205 A.2d 443 (1964) (cases decided prior to the institution of the Office of Administrative Law). While plaintiff is correct that he should have been served with the exceptions filed by the Deputy Attorney General, N.J.A.C. 1:1-18.4(a), and this lack of service denied him his right of reply, N.J.A.C. 1:1-18.4(d), we see no indications of what points were raised by the State that were not adequately covered by plaintiff's initial exceptions. Nor do we see how the State's exceptions influenced the Commission's final decision. Winston v. Bd. of Ed. So. Plainfield, 125 N.J. Super. 131, 309 A.2d 89 (App.Div. 1973), aff'd 64 N.J. 582, 319 A.2d 226 (1974), relied upon by plaintiff, is inapposite. There the failure of the State Board to follow its established procedure and provide the parties with the report of its Law Committee opened the possibility that the State Board had decided the case on the basis of information not in the record. Such is not the case here. The error therefore was harmless.
Plaintiff also claims that the decision of the Racing Commission was against the weight of the evidence. He gathers an impressive list of factors to support his conclusion that the drive was not the result of any lack of effort, but rather principally the result of the speed of the other horses, his horse's sore leg, and his race strategy in response to the circumstances as they existed at that time. The problem with plaintiff's argument is that the standard of review in this court is not whether the decision was "against the weight of the evidence," but whether the Commission's findings were supported *11 by sufficient credible evidence in the record, giving due regard to the administrative law judge's opportunity to assess the witness' credibility, and giving deference to the Commission's expertise. De Vitis, supra, 202 N.J. Super. at 489, 495 A.2d 457. Since from the testimony of the race judge and Steward alone there was sufficient credible evidence in the record to support the Commission's finding, the "weight of the evidence" argument must fail.
Lastly, plaintiff has challenged the 30-day suspension. Concerning the penalty, the Commission stated
The Racing Commission has vested in the Board of Judges the authority to punish for violation of the rules any persons subject to their control and in their discretion to impose a fine, suspension or both for infractions. The Racing Commission feels that a 30 day penalty for an unsatisfactory drive is consistent with past practice regarding penalties imposed against individuals violating the rules and regulations of the Racing Commission. The racing industry is a highly regulated industry and it's the Commission's duty to protect the integrity of the races and the conduct under which the races are run.
N.J.S.A. 5:5-30 states that the Commission has the power to prescribe rules and regulations under which horse races are to be conducted, and that all permits issued under the Act are to contain a condition that "all harness races shall be subject to the reasonable rules and regulations from time to time prescribed by the United States Trotting Association...." This mandate by the Legislature cannot be lightly disregarded. N.J.A.C. 13:71-1.1 implements the statute. It provides that the regulations of the New Jersey Racing Commission govern all horse racing in New Jersey, and
[i]f at any time there is a conflict between the rules of the New Jersey Racing Commission and the rules of the United States Trotting Association, the rules of the Commission shall govern.
Obviously, the Commission only considers as "reasonable" such rules and regulations of the United States Trotting Association as are not in conflict with its own rules. But, given the strong legislative direction, a "conflict" should not be found merely by implication.
*12 The Trotting Association has defined a specific penalty for "lack of effort or carelessness" in a situation where the racing judges "believe that there is no fraud, gross carelessness, or a deliberate inconsistent drive." The Trotting Association rules specifically provide that a penalty under this subsection is "not to exceed 10 days suspension, or a $100 fine." (Emphasis added). We have been shown no regulation by the Commission in direct conflict with this U.S.T.A. rule.
One of the Commission's rules, N.J.A.C. 13:71-2.3(a), provides that violations of the racing law or the rules of the Commission are subject to certain enumerated classes of penalties, including "[d]enial, revocation or suspension of license." But nowhere in the regulations is there a specification of a presumptive punishment of 30 days.[1] Nor is there a regulation directing that the Commission is to have unfettered discretion to impose any penalty. The regulation establishing the substantive offense, N.J.A.C. 13:71-20.10(b), quoted earlier, merely states that the track judges "may impose a penalty" for its infraction. If a limiting regulation or rule existed, the Trotting Association rule would be in conflict, and the Commission rule would govern.[2] However, under the facts before us, we see no inconsistency between the Trotting Association's specific limitation of a 10-day suspension and the general power given the Commission to assess suspensions as possible penalties for violations of its rules. We do not read the two sections, one granting the general power to deny, revoke or suspend a *13 license and another defining a period of suspension for a particular offense, as being in conflict.[3]
We, therefore, find that the Legislature's direction in N.J.S.A. 5:5-30, and the Commission's own rules, incorporate the U.S.T.A.'s 10-day limitation for infraction of this particular rule. We direct that the penalty imposed be reduced to a 10-day suspension.
The Racing Commission's determination is modified to reduce the penalty imposed to 10 days, and is otherwise affirmed.
NOTES
[1] If in fact the Commission has established a 30 day minimum penalty, the action should have been taken by amendment of the regulation after notice and an opportunity of the affected members of the industry to appear and be heard. At such a time the issue of the "reasonable" nature of the U.S.T.A. rule might be explored in the context of the Legislature's direction in N.J.S.A. 5:5-30.
[2] However, if the U.S.T.A.'s 10-day rule was "reasonable," there might be a sustainable claim that such a limiting Commission regulation violates N.J.S.A. 5:5-30.
[3] Furthermore, the Commission's determination that only a 30-day penalty for an unsatisfactory drive is consistent with past practice is not borne out by the one reported case involving a violation of the rule in question. In De Vitis v. N.J. Racing Commission, supra, 202 N.J. Super. at 488, 495 A.2d 457, there was but a 10-day suspension imposed.