48 A.3d 391

IN THE MATTER OF THE CHALLENGE OF THE NEW JERSEY STATE FUNERAL DIRECTORS ASSOCIATION TO AMENDMENTS N.J.A.C. 13:36–4.9(C); 13:36–5.17(C) AND 13:36–5.18(A).

Superior Court of New Jersey
Appellate Division

Argued May 29, 2012—Decided July 26, 2012.

272

Before Judges GRALL, ALVAREZ and SKILLMAN.

*Karen A. Confoy* argued the cause for appellant N.J. State Funeral Directors Association (*Sterns & Weinroth*, attorneys; *Ms. Confoy* and *Erica S. Helms*, on the brief).

*Susan C. Berger*, Deputy Attorney General, argued the cause for respondent N.J. State Board of Mortuary Science (*Jeffrey A. Chiesa*, Attorney General, attorney; *Andrea M. Silkowitz*, Assistant Attorney General, of counsel; *Ms. Berger*, on the brief).

The opinion of the court was delivered by

GRALL, J.A.D.

The New Jersey State Funeral Directors Association, Inc. (Association) challenges amendments to *N.J.A.C.* 13:36–4.9(c), 13:36–5.17(c) and 13:36–5.18(a), adopted by the Department of Law and Public Safety, Division of Consumer Affairs, State Board of Mor-

tuary Science (Board). 43 *N.J.R.* 2360 (Sept. 6, 2011). The amendments were proposed to "clarify a registered mortuary's responsibilities with respect to the participation of unlicensed persons in the removal and preparation of bodies for disposition." 42 *N.J.R.* 1674 (Aug. 2, 2010). The responsibility is to "ensure" that unlicensed persons follow "universal precautions" as set forth in *N.J.A.C.* 13:36–6.4 and "comply with applicable Board rules concerning the handling of human remains." *Ibid.* The Board proposed the amendments to protect the public health by preventing the spread of infection and disease. *Ibid.*

The Association does not contend that the Board deviated from the statutorily prescribed procedures for rulemaking, *N.J.S.A.* 52:14B–1 to –15. Its challenges are to the Board's authority to adopt the regulations affecting unlicensed persons by obligating licensed persons to "ensure" their compliance with the Board's rules. The Association contends:

I. THE AMENDMENTS ARE UNCONSTITUTIONAL BECAUSE THEY EXTEND THE BOARD'S REGULATORY AUTHORITY BEYOND THAT GRANTED TO IT BY THE LEGISLATURE UNDER THE MORTUARY SCIENCE ACT.

II. THE AMENDMENTS ARE ARBITRARY AND UNREASONABLE BECAUSE IT IS IMPOSSIBLE FOR THE REGISTERED MORTUARY TO COMPLY WITH THE OBLIGATION IMPOSED.

III. THE AMENDMENTS ARE INVALID BECAUSE THEY ARE UNCONSTITUTIONALLY VAGUE.

I

The scope of the amendments to the regulations must be understood in order to address the issues the Association raises. In interpreting regulations, we take the same approach we do in construing statutes. *US Bank, N.A. v. Hough,* 210 *N.J.* 187, 198–99, 42 *A.*3d 870 (2012). The primary goal is to give regulations the meaning intended by the drafter as revealed by the language of the provision. *Id.* at 199, 42 *A.*3d 870; *DiProspero v. Penn,* 183 *N.J.* 477, 492, 874 *A.*2d 1039 (2005). Regulatory provisions adopted together and addressing the same problem are read and understood together. *See, e.g., Hough, supra,* 210 *N.J.* at 210–11,

42 *A*.3d 870. Where there is ambiguity, or where a literal reading would lead to an absurd result, a court informs its interpretation with evidence of the meaning the drafter has assigned. *Aronberg v. Tolbert*, 207 *N.J.* 587, 598, 25 *A*.3d 1121 (2011). In the case of regulations, that intent may be evidenced in the record of the rulemaking process. *Hough, supra*, 210 *N.J.* at 199, 42 *A*.3d 870 (noting the relevance of "the meaning given to the particular regulation by the agency charged with its enforcement").

The Legislature has charged the Board with regulatory responsibility for "mortuary science" and defined that term to include both "embalming and funeral directing." *N.J.S.A.* 45:7–34. Those terms are broadly defined to encompass "the disinfecting or preservation of a dead human body" by various means and "preparation (other than embalming) for burial or disposal and the direction or supervision of burial or disposal of dead human bodies." *Ibid.*

The Board's regulations generally bar unlicensed persons from participating in mortuary science, but there are exceptions. *N.J.A.C.* 13:36–4.9, entitled "Participation of unlicensed persons," states the prohibition and the exceptions in paragraphs (a) and (b) as follows:

(a) No unlicensed person shall actively participate in any capacity in the actual funeral arrangements, preservation or disposal of dead human bodies, *except that interns may participate* in such activities pursuant to the provisions of *N.J.S.A.* 45:7–47.

(b) No unlicensed person shall actively participate in any capacity in the actual preparation of dead human bodies except for the following:

1. Interns;

2. Persons who perform religious and/or ritual preparations; and

3. Unlicensed persons who perform tasks on behalf of the registered mortuary for which a license is not required.

. . . .

[ (Emphasis added).]

The Association does not challenge the Board's decision to authorize the participation of unlicensed persons who are interns, or performing tasks on their behalf, or performing religious or ritual preparations. Those persons have had that authorization

since 1999. 31 *N.J.R.* 3126(a) (Oct. 18, 1999). The Association commented positively on the rule proposal that extended authorization to performers of religious and ritual preparations without commenting on that aspect of the proposal. *Ibid.*

The 2011 amendments to which the Association objects address its members' responsibility for those unlicensed persons. We describe the amendments in the order in which the provisions would be implicated following a death.

The first step is removal of the body. Paragraphs (b) and (c) were added to *N.J.A.C.* 13:36–5.17, the regulation addressing removal of the body. It provides:

(a) No person shall remove human remains from any residence or institution without first securing authorization consenting to the removal from the next of kin or a person legally entitled to grant said authorization.

(b) All removals of human remains shall be made pursuant to the direction of a registered mortuary.

(c) A registered mortuary shall ensure that all persons providing removal services utilize universal precautions as set forth in *N.J.A.C.* 13:36–6.4 and comply with all applicable Board rules.

Stating the obvious, paragraph (b) requires the involvement of a registered mortuary from the point the body of the deceased is removed. The Association does not challenge paragraph (b) or the Board's determination that its members should be involved at the point of removal. Its notice of appeal indicates an objection limited to paragraph (c) of this regulation, which requires a registered mortuary to ensure that persons providing removal services utilize the specified universal precautions and comply with all applicable Board rules.

The Association's second objection is to the addition of paragraph (c) to another regulation that governs participation of the unlicensed persons discussed above, *N.J.A.C.* 13:36–4.9. It provides:

(c) A registered mortuary shall retain professional responsibility for all activities conducted by any unlicensed person participating in the preparation of dead human bodies pursuant to (b) above, and shall ensure that such persons utilize universal precautions as set forth in *N.J.A.C.* 13:36–6.4 and comply with all applicable Board rules.

The Association's third objection is to paragraph (a) of *N.J.A.C.* 13:36–5.18, which addresses disposition of human remains. *N.J.A.C.* 13:36–5.18, set forth in full, provides:

(a) Whenever human remains are entrusted to the care of a registered mortuary for disposition, the registered mortuary shall retain professional responsibility for the remains from the point of removal to the final place of disposition.

(b) Notwithstanding (a) above, a licensed practitioner of mortuary science shall be present at the time of final disposition of human remains, consistent with *N.J.A.C.* 13:36–8.10, and shall comply with the requirements of *N.J.A.C.* 8:9 and shall not remove any body part or dispose of the remains in any manner, except as permitted by law and as authorized by the person legally entitled to grant said authorization.

(c) Viscera[1] shall be treated in the same manner as the remains and shall be disposed of with the remains.

 Before turning to consider the specific issues the Association raises, we address the Association's interpretation of the breadth of its obligation to ensure that unlicensed persons comply with universal precautions and applicable Board rules. The Association's arguments assume that the amendments impose these obligations on its members from the point of removal forward without regard to whether the registered mortuary has been entrusted with the body and even when the registered mortuary has no opportunity to act to ensure the unlicensed person's compliance with universal precautions and Board rules. The plain meaning of the regulations does not support either aspect of that interpretation.

Under *N.J.A.C.* 13:36–5.17(b), removals must be done "pursuant to the direction of a registered mortuary." Thus, the registered mortuary's obligation to ensure compliance arises in that context.

Similarly, the obligation imposed in paragraph (a) of *N.J.A.C.* 13:36–4.9 cannot be read to apply to actions that occur before the registered mortuary has been contacted. The language of *N.J.A.C.* 13:36–4.9 makes it clear that the obligation arises after the registered mortuary has assumed professional responsibility.

---

[1] The internal organs of the body, especially those within the abdominal and thoracic cavities. *Webster's II New College Dictionary* 1234 (1995).

By its terms, this regulation cannot be understood to reach back in time to some moment before the registered mortuary had been contacted and assumed responsibility because it provides that "[a] registered mortuary shall *retain* professional responsibility for all activities conducted by any unlicensed person participating in the preparation of dead human bodies pursuant to" paragraph (b). *N.J.A.C.* 13:36–4.9(c) (emphasis added). One cannot "retain" what one does not have, and this regulation cannot be understood to obligate a registered mortuary to assume any responsibility for actions undertaken by another before the mortuary was contacted.

The amendment to *N.J.A.C.* 13:36–5.18(a), the third amendment challenged here, also quite clearly limits responsibility to instances in which responsibility has been assumed. It provides: "Whenever human remains are entrusted to the care of a registered mortuary for disposition, the registered mortuary shall retain professional responsibility for the remains from the point of removal to the final place of disposition." Again, the obligation attaches when the mortuary becomes authorized to direct the removal, *see N.J.A.C.* 13:36–5.17(b), and is entrusted with the care *and* responsibility to "retain."

Read together and in accordance with the plain meaning of the regulatory language, these amendments impose an obligation when the registered mortuary has assumed responsibility to direct the removal pursuant to *N.J.A.C.* 13:36–5.17(b) or has done so at some later point in the course of events between death and final disposition. In those circumstances, the registered mortuary has an obligation to ensure compliance by an unlicensed person who becomes involved.

The Board's response to an objection the Association submitted during the rulemaking process indicates that our reading is consistent with the Board's intent. The Association submitted a comment advising the Board that families frequently contact "burial societies or religious organizations [that] make the removals directly and may perform religious and/or ritual preparation of the remains before a funeral director is even contacted." 43 *N.J.R.*

2361 (Sept. 6, 2011). In that circumstance, the Association argued, "it is impossible for a funeral director to have any control or supervision over the actions of the third party." *Ibid.* In the same comment, the Association also indicated that it would be "very difficult" to control the conduct of a third party in other circumstances. *Ibid.*

The Board responded by noting "public safety dictates that a registered mortuary make *reasonable efforts to ensure* that unlicensed persons who, although not under the supervision or control of the registered mortuary, are providing services *in connection with the final disposition of human remains entrusted to the mortuary's care,* observe these precautions." *Ibid.* (emphasis added). This response suggests that the Board views the obligation as one arising after a registered mortuary becomes involved. It also indicates that the Board does not intend to make the registered mortuary a guarantor; the Board understands the amendments to require no more than "reasonable efforts to ensure."

Having identified the scope of the obligations imposed with these amendments to the Board's regulations, we turn to consider the Association's challenges.

II

"Judicial review of agency regulations begins with a presumption that the regulations are both 'valid and reasonable.'" *New Jersey Ass'n of School Adm'rs v. Schundler,* 211 *N.J.* 535, 49 *A.*3d 860 (2012) (quoting *N.J. Soc'y for the Prevention of Cruelty to Animals v. N.J. Dep't of Agric.,* 196 *N.J.* 366, 385, 955 *A.*2d 886 (2008) (with citation omitted)). To prevail on its challenges to these amendments, the Association must prove that they are "'arbitrary, capricious or unreasonable.'" *Schundler, supra,* 211 *N.J.* at 548, 49 *A.*3d 860 (quoting *Henry v. Rahway State Prison,* 81 *N.J.* 571, 579–80, 410 *A.*2d 686 (1980)). That burden can be met by showing that the regulations violate policies expressed or implied in the enabling act—that the Board has exceeded its

delegated authority. *In re Petitions for Rulemaking, N.J.A.C. 10:82–1.2 & 10:85–4.1,* 117 *N.J.* 311, 325, 566 *A.*2d 1154 (1989).

The Association has not established that these amendments exceed what the Legislature intended. In reviewing such a challenge, courts "place[ ] great weight on the interpretation of legislation by the administrative agency to whom its enforcement is entrusted." *Peper v. Princeton Univ. Bd. of Trs.,* 77 *N.J.* 55, 69–70, 389 *A.*2d 465 (1978). Nevertheless, "[a]dministrative regulations 'cannot alter the terms of a statute or frustrate the legislative policy.' " *In re N.J. Individual Health Coverage Program's Readoption of N.J.A.C. 11:20–1,* 179 *N.J.* 570, 579, 847 *A.*2d 552 (2004) (quoting *Med. Soc'y of N.J. v. N.J. Dep't of Law & Pub. Safety,* 120 *N.J.* 18, 25, 575 *A.*2d 1348 (1990)). "An administrative agency may not under the guise of interpretation extend a statute to include persons not intended, nor may it give the statute any greater effect than its language allows." *Kingsley v. Hawthorne Fabrics, Inc.,* 41 *N.J.* 521, 528, 197 *A.*2d 673 (1964).

The Legislature granted the Board broad authority to regulate mortuary science. "In the interest of, and to better secure, the public health, safety and welfare," the Legislature declared "the practice of mortuary science and the practice of embalming and funeral directing . . . to be occupations charged with a high degree of public interest and subject to strict regulation and control." *N.J.S.A.* 45:7–33. To that end, the Legislature has

> authorized and empowered [the Board] to adopt such rules and regulations, not inconsistent with this entire act or any amendment or supplement which may hereafter be adopted, *as shall be reasonably proper and advisable for the promotion or improvement of* the standards of service, protection and practice to be followed in *the practice* of mortuary science, embalming and funeral directing by individuals, corporations, partnerships and associations in the State of New Jersey, and *for and in the interest, preservation and improvement of the public health, morals, safety and welfare.*
>
> [*N.J.S.A.* 45:7–38 (emphasis added).]

In addition to the broad grant of authority provided in *N.J.S.A.* 45:7–38, that statute gives the Board specific authority to "adopt rules and regulations concerning . . . (a) the manner in which a

mortuary or funeral establishment is conducted, ... [and] (e) unethical or unprofessional conduct[.]" *N.J.S.A.* 45:7–38. In addition, the Legislature has also prohibited unlicensed persons from "engag[ing] in the practice of mortuary science." *N.J.S.A.* 45:7–47.

▮ These amendments do not frustrate or conflict with the Legislature's purpose in regulating those involved in this profession to "better secure the public health, safety and welfare." Collectively, the amendments require a registered mortuary to direct removals of human remains by unlicensed persons, and in so doing, make reasonable efforts to ensure that unlicensed persons observe universal precautions and comply with applicable Board rules while handling the body at any point during the period in which it is entrusted to the mortuary. The Legislature has prohibited unlicensed practice of mortuary science, and the Board's imposition of this obligation is reasonably related to that prohibition.[2] These unlicensed persons are obligated to follow universal precautions under a regulation adopted by the Department of Health and Human Services. It provides:

(a) As used in this chapter, "Standard Precautions" means the Standard Precautions, as excerpted from the Guideline for Isolation Precautions in Hospitals (January 1996), incorporated herein by reference, as amended and supplemented, written by Julia S. Garner, RN, MN, and the Hospital Infection Control Practices Advisory Committee, from the Public Health Service, U.S. Department of Health and Human Services, Centers for Disease Control and Prevention, Atlanta, Georgia, published with the following citations in the following scientific journals: Garner JS, Hospital Infection Control Practices Advisory Committee, Guideline for isolation precautions in hospitals, Infect. Control Hosp. Epidemiol.1996; 17:53–80, and Am. J. Infect. Control 1996; 24:24–52, and available at http://www.cdc.gov/ncidod/dhqp/gl_isolation_standard.html.

1. As used in the Standard Precautions, for purposes of this chapter, the term "patient" shall be construed to mean "dead body" or "disinterred remains," as applicable.

---

[2] The Association does not contend that the Board lacks the authority to allow participation by unlicensed persons who perform religious and ritual preparation under the supervision of a registered mortuary to accommodate the beliefs of the decedent or his or her next of kin. Accordingly, we do not address that issue.

(b) In the preparation for burial, other disposition, or transportation of a dead body, and during the handling of or work with disinterred remains, all persons present as authorized pursuant to *N.J.A.C.* 13:36–6.1, *regardless of where the handling or preparation occurs,* shall adhere to the Standard Precautions.

(c) All fluids or other matters removed from such body in the process of embalming and any waste material and used disposable nonreusable equipment shall be disposed of in accordance with all applicable State, Federal and local laws and regulations governing medical and infectious waste.

[*N.J.A.C.* 8:9–1.3 (emphasis added).]

The regulation referenced in paragraph (b) to identify persons covered is one that was adopted by this Board. Consistent with *N.J.A.C.* 13:36–4.9(b), it included licensed practitioners of mortuary science and their employees, authorized instructors of funeral directing schools, interns, public officials or representatives discharging their duties, accredited doctors or nurses, members of the immediate family of the deceased and their designated representatives and persons who perform religious and/or ritual preparations. Thus, by force of this regulation adopted by the Department of Health and Human Services, performers of religious or ritual services are already obligated to use precautions.

The burdens imposed by these amendments are properly viewed as complementing the health regulation by ensuring that persons regulated by the Board make reasonable efforts to ensure that unlicensed persons comply with their independent obligations. *N.J.S.A.* 45:7–38. So viewed, the obligation imposed is in furtherance of the Board's authority to adopt regulations avoiding "unprofessional conduct" by its regulatees. The Board, with its expertise concerning the impact of non-compliance with universal precautions and its applicable rules, could reasonably conclude that the professionals it regulates should take reasonable efforts to ensure that those unlicensed persons handling a body entrusted to the professionals follow their legal obligations.

### III

There is no question that "[a] regulation which in practice is illusory or impossible to comply with is arbitrary and

oppressive and would violate due process." *Group Health Ins. of N.J. v. Howell,* 43 *N.J.* 104, 112, 202 *A.*2d 689 (1964). Nevertheless, extended discussion is not required to address the Association's claim that these amendments have that defect. The Association's claim rests primarily on its overly broad reading of these amendments to make its members responsible for actions that take place before the registered mortuary is contacted. As discussed in Part I of this opinion, the regulations do not impose that obligation.

To the extent that the Association argues that it cannot "ensure" compliance by persons over whom it has no control, the claim has some facial appeal. But the Board has stated in response to the Association's assertion of this claim that the Board expects its professionals to do no more than make "reasonable efforts" to ensure compliance. On this facial challenge, there is no basis to assume that the Board will require any more than it has announced—reasonable efforts. Moreover, given that unlicensed persons are subject to regulations requiring them to take precautions, this obligation to make reasonable efforts to ensure compliance is necessarily neither impossible or oppressive.

IV

A regulation that is unconstitutionally vague will also be invalidated. *See In re Health Care Administration Bd.,* 83 *N.J.* 67, 82, 415 *A.*2d 1147 (1980) (considering and rejecting a vagueness challenge). "[T]he constitutional ban on vague laws is intended to invalidate regulatory enactments that fail to provide adequate notice of their scope and sufficient guidance for their application." *State v. Cameron,* 100 *N.J.* 586, 591, 498 *A.*2d 1217 (1985). The doctrine is applied to require fair notice and avoid the potential for arbitrary enforcement.

The Association's challenge is a facial challenge. The "Supreme Court has stated that the test for facial invalidity is whether the language is 'so vague that a person of ordinary intelligence is unable to discern what it requires, prohibits, or punishes.'" *Moi-*

*seyev v. N.J. Racing Comm'n,* 239 *N.J.Super.* 1, 5–6, 570 *A.*2d 988 (App.Div.1989) (quoting *Brown v. Newark,* 113 *N.J.* 565, 572–73, 552 *A.*2d 125 (1989)). These amendments leave no room for such uncertainty.

■ As interpreted by the Board, those subject to these amendments must make reasonable efforts to ensure that unlicensed persons handling a body entrusted to the care of a registered mortuary follow specified precautions and applicable regulations of the Board. Those standards are readily discernible and well known by these professionals because they are also bound by them.

In addition, the effort required of the registered mortuary—reasonable efforts to ensure—is sufficiently definite. "In the area of occupational restrictions, any imprecision in drafting must be assessed with a recognition that the governing body of the occupation or profession is uniquely qualified to assess the meaning of the language." *Moiseyev, supra,* 239 *N.J.Super.* at 6, 570 *A.*2d 988. The Board is the drafter and the sole enforcer, and that limits the risk of arbitrary enforcement that flows from lack of clarity in other contexts. With respect to "fair warning or notice," we are mindful of the fact that professionals to whom a statute or regulation applies "have a peculiar expertise in being able to assess" the meaning of its terms. *In re Polk,* 90 *N.J.* 550, 575, 449 *A.*2d 7 (1982).

Because the Board understands these amendments to require no more than "reasonable efforts to ensure" compliance with discernible objective standards in furtherance of its obligation to protect the public health, the amendments are not impermissibly vague. They compare favorably with a Racing Commission regulation directed at drivers in harness races that we upheld against a vagueness challenge in *Moiseyev.* It provided:

> In the event a drive is unsatisfactory due to *lack of effort* . . ., and the judges believe that there is no fraud, gross carelessness, or a deliberate inconsistent drive, [the race judges] may impose a penalty. . . .
>
> [239 *N.J.Super.* at 4, 570 *A.*2d 988.]

Judge Dreier explained that "to an expert in the field," observations of actions such as failing to take the lead could "constitute objective standards for evaluation" of lack of effort. *Id.* at 8, 570 A.2d 988. Considering the expertise of the Commission and the drivers and the Commission's statutory obligation to diligently control the sport, the panel determined that the regulation permitting a sanction for "lack of effort" was not void for vagueness.

We see no basis for reaching a different conclusion here. These amendments affect professionals obligated to refrain from conduct dangerous to the public health that is inherently at risk in this line of work. In obligating them to take reasonable efforts to ensure that unlicensed persons participating in the removal, preparation or disposal of a body comply with precautions those persons must follow in any event, the Board appropriately requires the professionals to make "reasonable efforts." Given the Board's obligations to protect the public health and the risk presented, it is proper for the Board to require professionals to do what is reasonable in each circumstance. That undoubtedly depends on factors that vary from case to case—factors such as the relationship between the mortuary and the unlicensed person, prior dealings between them, the unlicensed person's willingness to cooperate and the registered mortuary's efforts to encourage or compel compliance by, for example, contacting authorities. The duty is stated with sufficient clarity to provide notice of what must be done, and it is sufficiently objective to avoid arbitrary enforcement.

Affirmed.