Julio ZORRILLA, Tashauna Reid, Matthew Mackey, Jose Fernandez, Benjamin Kramer, Amanda Stewart, Amber Swan, Kristine Zeffield, Sydni Smith, Nichole Marino, John Verdin, Jane Bateman and Joseph Lombard, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

CARLSON RESTAURANTS INC., Carlson Restaurants Worldwide, Inc., and T.G.I. Friday's Inc., Defendants.

14 Civ. 2740 (AT) (GWG)

United States District Court, S.D. New York.

Signed May 25, 2017

468

Brian Scott Schaffer, Frank Joseph Mazzaferro, Joseph A. Fitapelli, Fitapelli & Schaffer LLP, Justin Mitchell Swartz, Sally Jasmine Abrahamson, Molly Anne Brooks, Chauniqua Danielle Young, Cheryl-Lyn Deon Bentley, Deirdre Anne Aaron, Juno Emmeline Turner, Michael Joseph Scimone, Rebecca J. Sobie, Outten & Golden, LLP, New York, NY, for Plaintiffs.

Adam Jeremy Smiley, Brendan M. Sweeney, Gina Renee Merrill, Scott Roblan Rabe, Seyfarth Shaw LLP, New York, NY, Gerald Leonard Maatman, Jr., Jennifer A. Riley, Seyfarth Shaw LLP, Chicago, IL, for Defendants.

## MEMORANDUM AND ORDER

ANALISA TORRES, District Judge:

Plaintiffs bring a nationwide wage-and-hour collective action, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and nine state-specific class actions, with each class alleging violations of the labor and/or the unfair

competition laws of California, Colorado, Connecticut, Florida, Illinois, Maryland, Michigan, New Jersey, New York. *See* Fourth Amended Class Action Complaint ("FAC"), ECF No. 389. Now before the Court is Defendants' motion to dismiss certain state-law claims. ECF No. 399. Specifically, Defendants argue that, as a matter of statutory and regulatory interpretation, the following claims fail: (1) the New Jersey tip-pooling claim, FAC ¶¶ 645–65 (part of the eleventh cause of action); (2) the Connecticut uniform claim, *id.* ¶¶ 780–84 (twenty-eighth cause of action); (3) the Michigan tip-credit claim, *id.* ¶¶ 827–38 (thirty-fourth cause of action); and (4) some of the California Unfair Competition Law claims, *id.* ¶¶ 687–724 (parts of the sixteenth through twentieth causes of action). Defendants also argue that the statute of limitations bars all of the California Labor Code claims. *Id.* ¶¶ 687–724 (parts of the sixteenth through twentieth causes of action).

For the reasons stated below, the Court GRANTS the motion to dismiss with respect to the New Jersey tip-pooling claim, the Connecticut uniform claim, and the Michigan tip-credit claim. The Court GRANTS IN PART the motion to dismiss the California Unfair Competition Law claims, and DENIES the motion with respect to the California Labor Code claims.

**BACKGROUND** [1]

### I. The Parties

Defendants Carlson Restaurants Inc. and Carlson Restaurants Worldwide Inc. (the "Carlson Entities") operate together as a hospitality and travel company employing more than 175,000 people. *Id.* ¶¶ 12–14. Defendant T.G.I. Friday's Inc.

("T.G.I. Friday's"), a restaurant chain, was at relevant times a wholly owned subsidiary of the Carlson Entities. *Id.* ¶ 151. Each Defendant "had substantial control over Plaintiffs' working conditions." *Id.* ¶ 127. And at all relevant times, T.G.I. Friday's "maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including timekeeping, payroll, and other employment practices." *Id.* ¶ 152.

Julio Zorrilla, Tashauna Reid, Matthew Mackey, Jose Fernandez, Benjamin Kramer, Amanda Stewart, Amber Swan, Kristine Zeffield, Sydni Smith, Nichole Marino, John Verdin, Jane Bateman, and Joseph Lombard (collectively, the "Named Plaintiffs") are former tipped employees at T.G.I. Friday's restaurants owned and/or operated by Defendants. *Id.* ¶¶ 60–125. The Named Plaintiffs worked at T.G.I. Friday's located in New York, New Jersey, Colorado, California, Connecticut, Illinois, Maryland, Michigan, and Florida. *Id.* ¶¶ 61, 66, 71, 76, 82, 87, 92, 97, 102, 107, 112, 116, 122.

### II. Defendants' Employment Practices

At issue in this motion are Plaintiffs' allegations regarding three of Defendants' employment practices. First, Plaintiffs allege that although "Defendants paid Plaintiffs at a 'tipped' minimum wage rate," *id.* ¶ 19, Defendants also maintained a policy and practice whereby Plaintiffs pooled their tips with non-tipped workers, *e.g., id.* ¶ 651, and performed "non-tip producing side work" such as "general cleaning," *e.g., id.* ¶ 24.

Second, Plaintiffs allege that "Defendants maintained a policy and practice whereby tipped workers were required to

---

1. The following facts are taken from the FAC unless indicated otherwise and accepted as true for the purposes of this motion. *See ATSI*

*Commc'ns Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007).

wear uniforms featuring the T.G.I. Friday's logo." *Id.* ¶ 46. Plaintiffs further allege that "Defendants did not supply tipped workers with a sufficient number of uniforms for multiple shifts," but instead required Plaintiffs "to purchase" and "pay for the cleaning and maintenance of their [own] uniforms." *Id.* ¶¶ 47–51.

Third, Plaintiff Swan, the sole Named Plaintiff from California, alleges that, pursuant to Defendants' policies, Swan (1) "perform[ed] work off-the-clock and without compensation," *id.* ¶ 691; and (2) was not compensated for her labor within 30 days of the end of her employment, *id.* ¶¶ 722–24.

### III. Relevant Procedural History

On April 17, 2014, Plaintiffs filed this lawsuit (the "First Complaint") "seek[ing] to recover minimum wages, overtime compensation, spread-of-hours pay, misappropriated tips, uniform-related expenses, unlawful deductions, and other wages for Plaintiffs and their similarly situated co-workers." Class Action Compl. (the "First Compl.") ¶ 1, ECF No. 1. The First Complaint alleges an opt-in collective action, pursuant to 29 U.S.C. § 216(b), on "behalf of [the original named plaintiffs] and all similarly situated current and former tipped workers employed at T.G.I. Friday's restaurants owned, operated, and/or controlled by Defendants." *Id.* ¶ 106; *see also id.* ¶¶ 107–15. The First Complaint also alleges a class action pursuant to Federal Rule of Civil Procedure 23 consisting of "all similarly situated current and former tipped workers employed at T.G I. Friday's in New York." *Id.* ¶ 116; *see also id.* ¶¶ 116–31.

On August 1, 2014, the Court issued a Civil Case Management and Scheduling Order. ECF No. 31 ("Scheduling Order"). As part of the Scheduling Order, Plaintiffs represented that "if the Court grants

Plaintiffs' contemplated motion for FLSA conditional certification, after the opt-in period, Plaintiffs intend to move to amend to add additional state law claims under Federal Rule of Civil Procedure 23 and class representatives for those claims. Any motion to amend will be made within 30 days after the opt-in period expires . . . ." *Id.* ¶ 3.

On January 20, 2015, the Court issued a Memorandum and Order conditionally certifying the FLSA collective action, and authorizing notice and expedited discovery. *See Flood v. Carlson Rests. Inc.*, 14 Civ. 2740, 2015 WL 260436, at *1 (S.D.N.Y. Jan. 20, 2015), ECF No. 116. On August 19, 2015, Plaintiffs sent Court-authorized notice to more than 40,000 tipped workers, and by December 19, 2016, the end of the opt-in period, approximately 4,588 workers had opted in. Decl. of Juno Turner ¶ 12, ECF No. 453; *see also* Order, ECF No. 287 (extending opt-in period to December 19, 2015). Swan filed a consent-to-join form on September 29, 2015. ECF No. 248.

On January 19, 2016, Plaintiffs sought leave to file a Third Amended Class Action Complaint. ECF No. 345. In the proposed complaint, Swan was, for the first time, a named plaintiff. Decl. of Justin M. Swartz Ex. A ("Proposed Third Am. Class Action Compl."), ¶¶ 6, 92–96, 721–53. Defendants opposed the motion to amend, arguing *inter alia* that the addition of the new state-law claims would cause them undue prejudice. *See, e.g.*, ECF No. 348 at 9–11. The Court granted Plaintiffs' request to amend, stating:

> Although the parties may need to expand discovery in light of the nuances required to establish, or defend against, liability under each state-law claim, the operative facts underlying those claims are largely the same. No significant additional burden is imposed on Defendants should they be required to tailor,

around the edges, depositions, interrogatories, or other discovery to account for whatever unique facts may be pertinent for a given state claim.

*Flood v. Carlson Rests. Inc.*, 14 Civ. 2740, 2016 WL 3221146, at *2 (S.D.N.Y. June 7, 2016), ECF No. 361.

On August 2, 2016, the Court granted Plaintiffs' request to file a Fourth Amended Class Action Complaint, ECF No. 382, which was filed on August 17, 2016, ECF No. 389. This complaint restates the opt-in FLSA collective action alleged in the first complaint, *see* FAC ¶¶ 164–73, and brings pursuant to Federal Rule of Civil Procedure 23 nine state-specific class actions, with each class consisting of a state-wide class consisting of "all similarly situated current and former tipped workers employed at T.G I. Friday's," for each of the nine states in which a Named Plaintiff was employed, *id.* ¶ 164; *see also id.* ¶¶ 174–317.

On September 9, 2016, Defendants filed the present motion to dismiss. ECF No. 399.

## DISCUSSION

### I. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). On such a motion, the Court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that Plaintiffs knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The Court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the non-movant. *ATSI Commc'ns, Inc.*, 493 F.3d at 98.

■ ■ When sitting in diversity and adjudicating a question of unsettled state law, as the Court does for many of the issues here, a federal court must "predict how the state court [of last resort] would resolve an ambiguity in state law." *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000). "In predicting how a state's highest court would rule on an issue, it is helpful to consider the decisions of the state's trial and appellate courts." *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 399 (2d Cir. 2001). "Other data include relevant case law from other jurisdictions on the same or analogous issues, scholarly writings in the field, and any other resources available to the state's highest court." *Michalski*, 225 F.3d at 116 (citing *Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 48 (2d Cir. 1993)).

### II. Analysis of Specific Claims

#### A. New Jersey Labor Law

■ In the eleventh cause of action, Plaintiffs allege that Defendants violated New Jersey law by "distribut[ing] a portion of ... [Plaintiff Fernandez's] tips to workers [who] are not 'food servers' or 'food clearers.'" FAC ¶ 651. According to Plaintiffs, this form of tip pooling violates the New Jersey Administrative Code § 12:56–8.2, which states in full: "Where employees practice gratuity splitting (for example, where food servers pay a portion of the gratuities received by them to food clearers), each employee shall have included in wages only the applicable proportionate share." Plaintiffs further contend that the FLSA's prohibition against tip pooling, *see, e.g., Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 240 (2d Cir. 2011) (prohibiting tip pooling between

tipped and non-tipped employees), should be read into § 12:56–8.2, as these regulatory regimes are often construed similarly. Pls.' Opp'n 9, ECF No. 405. Defendants argue that this claim should be dismissed because § 12:56–8.2 "do[es] not contain any reference to tip pooling and do[es] not restrict participation in tip pools." Defs.' Mem. 3, ECF No. 400.

■ Construing this regulation is a question of first impression. When interpreting regulations, New Jersey courts "take the same approach [that they take] in construing statutes. The primary goal is to give regulations the meaning intended by the drafter as revealed by the language of the provision." *In re N.J. State Funeral Dirs. Ass'n*, 427 N.J.Super. 268, 48 A.3d 391, 394 (2012). And when interpreting statutes, the Supreme Court of New Jersey has held that "[t]here is no more persuasive evidence of legislative intent than the words by which the Legislature undertook to express its purpose; therefore, we first look to the plain language of the statute." *Perez v. Zagami, LLC*, 218 N.J. 202, 94 A.3d 869, 873 (2014) (citing *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 964 A.2d 741, 746 (2009)).

The Court finds that Plaintiffs' proposed interpretation is unsupported by the plain language of the regulation. Quite simply, § 12:56–8.2 does not limit the universe of workers who may pool and split their tips, but instead limits the resulting tip credit. That is, under § 12:56–8.2, if employees practice gratuity splitting, then the employer can only count against its minimum wage obligation the tips that the employee receives via gratuity splitting. *See* N.J. Admin. Code § 12:56–14.4 (defining minimum wage obligations in "restaurant occupations"). The Court also rejects Plaintiffs' contention that the FLSA's prohibition on tip pooling should be read into New Jersey law because when "the language or intent of state and federal labor laws substantially differ, reliance on federal regulations or interpretations to construe state regulations is misplaced." *Marx v. Friendly Ice Cream Corp.*, 380 N.J.Super. 302, 882 A.2d 374, 383 (2005). Here, the FLSA prohibits some forms of tip pooling pursuant to 29 U.S.C. § 203(m), a textual provision which explicitly limits pooling to "employees who customarily and regularly receive tips." Plaintiffs have not cited to, nor is the Court aware of, any analogous New Jersey statute or regulation. The absence of an analogous provision indicates that reliance on federal labor would be misplaced. The Court, therefore, dismisses the New Jersey tip-pooling claim.

## B. Connecticut Labor Law

■ In the twenty-eighth cause of action, Plaintiffs allege that "Defendants required [Plaintiff] Marino to wear a uniform," and that Defendants neither "launder[ed]" nor "maintain[ed]" Marino's uniform. *Id.* ¶¶ 781–82. According to Plaintiffs, these practices acted as a *de facto* deduction of Marino's wages and thus violated either: (1) the part of the Regulation of Connecticut State Agencies § 31–60–9 that states "[a]n allowance (deduction) not to exceed $1.50 per week or the actual cost, whichever is lower, may be permitted to apply as part of the minimum fair wage for the maintenance of wearing apparel or for the laundering and cleaning of such apparel when the service has been performed"; or (2) the General Statutes of Connecticut § 31–71e, which states:

No employer may withhold or divert any portion of an employee's wages unless (1) the employer is required or empowered to do so by state or federal law, or (2) the employer has written authorization from the employee for deductions on a form approved by the commission-

er, or (3) the deductions are authorized by the employee, in writing, for medical, surgical or hospital care or service, without financial benefit to the employer and recorded in the employer's wage record book.

See Pls.' Opp'n 10–11. Defendants argue that this claim should be dismissed because "Connecticut law does not require employers to pay for the maintenance of uniforms." Defs.' Mem. 3.

Turning first to § 31–60–9, the Court finds that the interpretation of the regulation is a question of first impression. The Supreme Court of Connecticut has explained that "[w]hen interpreting regulations, if the provisions are reasonably clear, [a court] need not engage in further construction to ascertain their meaning." *Diamond v. Marcinek.*, 226 Conn. 737, 629 A.2d 350, 355 (1993). It has also held that "[w]hen interpreting a regulation, [a court] must use common sense," *Citerella v. United Illuminating Co.*, 158 Conn. 600, 266 A.2d 382, 387 (1969), and "must assume that a reasonable and rational result was intended and construe the regulation accordingly," *Fullerton v. Dep't of Revenue Servs.*, 245 Conn. 601, 714 A.2d 1203, 1208 (1998) (quoting *Citerella*, 266 A.2d at 387).

Applying these principles, the Court rejects Plaintiffs' interpretation. The "reasonably clear" construction of the sentence that Plaintiffs cite is not that an employer is required to pay a set amount for every employee's uniform maintenance; rather, when an employer elects to maintain an employee's apparel, then the employer is entitled to take a deduction. The permissive, but not mandatory, nature of this provision is made clear by the verb "may" in the phrase "may be permitted to apply." Conn. Agencies Regs. § 31–60–9. And the discretionary nature of this deduction is reinforced by the regulation's following

sentence, which describes the circumstances in which an employer is required to provide and maintain uniforms. *Id.* ("When protective garments such as gloves, boots or aprons are necessary to safeguard the worker or prevent injury to an employee or are required in the interest of sanitation, *such garments shall be provided and paid for and maintained by the employer* without charge upon the employee." (emphasis added)). The "reasonably clear" interpretation of this regulation is that the alleged conduct—having Marino maintain her uniform at her own cost—does not violate § 31–60–9.

Turning to § 31–71e, the Court finds that prior interpretations of this statute foreclose Plaintiffs' theory that requiring Marino to maintain her own uniform is an illegal deduction. See Pls.' Opp'n 11. Specifically, in *Mytych v. May Department Stores*, the Supreme Court of Connecticut held that § 31–71e does not create any "substantive rights regarding *how* a wage is earned; rather, [it] provide[s] remedial protections for those cases in which the employer-employee wage agreement is violated." 260 Conn. 152, 793 A.2d 1068, 1073 (2002); *see also id.* ("[Section 31–71e] does not purport to define the wages due; it merely requires that those wages agreed to will not be withheld for any reason."). Given the non-substantive nature of this provision, the Court finds that § 31–71 e does not prohibit Defendants from having a policy requiring their employees to maintain their own uniforms. The Court, therefore, dismisses the Connecticut uniform claim.

## C. Michigan Labor Law

■ In the thirty-fourth cause of action, Plaintiffs allege that Defendants required Plaintiff Lombard to "perform a substantial amount of non-tip producing duties in excess of twenty percent of [his] work

time," and that his compensation was at all times limited to "the tipped minimum wage or lower rate." FAC ¶ 834. Plaintiffs contend that this practices violated Michigan Compiled Law § 408.414d, which permits an employer to take a tip credit only when "[t]he employee receives gratuities in the course of his or her employment." Defendants argue that this claim should be dismissed because § 408.414d does not place any specific threshold on how much of an employee's labor may be in performance of tasks that do not produce gratuities. Defs.' Mem. 5–6.

■ Interpreting § 408.414d is a question of first impression. For Michigan courts, the "primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature.... If the statute is unambiguous on its face, the Legislature is presumed to have intended the meaning plainly expressed and further judicial interpretation is not permissible." *Allen v. MGM Grand Detroit, LLC*, 260 Mich.App. 90, 675 N.W.2d 907, 909 (2003) (citations omitted). Although § 408.414d has yet to be interpreted, the Michigan Court of Appeals has favorably cited the Black's Law Dictionary definition of the phrase "course of employment," which defines it as "events that occur or circumstances that exist as part of one's employment; esp., the time during which an employee furthers an employer's goals through employer-mandated directives." *Amerisure Mut. Ins. Co. v. Carey Transp., Inc.*, No. 270339, 2007 WL 29235, at *4 (Mich. Ct. App. Jan. 4, 2007) (per curiam) (quoting *Course of Employment*, Black's Law Dictionary, Deluxe Seventh Edition (West 1999)); *see also Course of Employment*, Black's Law Dictionary (10th ed. 2014) (same definition).

The Court rejects Plaintiffs' proposed interpretation. The statute permits an employer to take a tip credit when "[t]he

employee receives gratuities in the course of his or her employment." Mich. Comp. Laws § 408.414d. As the definition from Black's Law Dictionary suggests, the plain meaning of the phrase "course of employment," includes situations where the employee receives gratuities as *part* of his or her employment, and not, as Plaintiffs would have the Court conclude, during *every part* of his or her employment. That is, an employee can be said to have "receiv[ed] gratuities in the course of his or her employment," even though not every act of his or her employment generated gratuities. Applying this interpretation to the alleged facts—that not all of Plaintiffs' labor was tip producing—the Court finds that Plaintiffs' do not allege a violation of § 408.414. The Court, therefore, dismisses the Michigan tip-credit claim.

### D. California Unfair Competition Law

In the sixteenth through twentieth causes of action, Plaintiffs allege that Defendants violated the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and that Plaintiffs are entitled to liquidated damages for these violations. FAC ¶¶ 687–727. Defendants argue that the UCL does not permit recovery of damages or penalties, and therefore the following claims should be dismissed: (1) the UCL bases of the seventeenth, eighteenth, and twentieth causes of action, *id.* ¶¶ 695–702, 703–09, 718–24; and (2) all requests for liquidated damages on the UCL claims, *id.* ¶¶ 694, 702, 709, 717.

As an initial matter, the Court finds that Plaintiffs do not oppose the motion to dismiss the unfair competition bases of the seventeenth and twentieth causes of action, nor do they oppose the dismissal of their request for liquidated damages. *See* Defs.' Mem. 11–16 (arguing for the legal insufficiency of these claims); Pls.' Opp'n

(not responding to Defendants' arguments); Defs.' Reply 11–13, ECF No. 408 (noting lack of response). The Court, therefore, deems these claims abandoned, and dismisses them. *See Lipton v. County of Orange*, 315 F.Supp.2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."); *see also Tomlinson v. Indymac Bank, F.S.B.*, 359 F.Supp.2d 891, 897 (C.D. Cal. 2005) (explaining that liquidated damages are not available under California UCL).

▇ As to the eighteenth cause of action, the Court finds that Plaintiffs allege a viable UCL claim. As the Supreme Court of California has explained:

> The concept of restoration or restitution, as used in the UCL, is not limited only to the return of money or property that was once in the possession of that person.... [E]arned wages that are due and payable ... are as much the property of the employee who has given his or her labor to the employer in exchange for that property as is property a person surrenders through an unfair business practice.

*Cortez v. Purolator Air Filtration Prod. Co.*, 23 Cal.4th 163, 96 Cal.Rptr.2d 518, 999 P.2d 706, 715 (2000). Here, Plaintiffs allege that they are entitled to the cost of uniform maintenance as part of their compensation. FAC ¶¶ 707–8; *see also* Order Number 5, Cal. Code Regs. tit. 8, § 11050. Plaintiffs claim that Defendants have yet to pay them part of the compensation they earned in exchange for their labor. This is a viable UCL claim and, therefore, Defendants' motion is denied.

### E. California Labor Code

In the sixteenth through twentieth causes of action, Plaintiffs allege that De-

fendants violated various California Labor Code provisions. Defendants contend that these claims should be dismissed because they did not employ Swan, the sole Named Plaintiff from California, within three-years of Plaintiffs filing the Fourth Amended Complaint, and thus the statute of limitations bars these claims. Defs.' Mem. 8–10; *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal.4th 1094, 56 Cal. Rptr.3d 880, 155 P.3d 284, 297 (2007) (holding that California Labor Code claims have a three-year statute of limitations). To vindicate their statute of limitations contention, Defendants request that the Court take judicial notice of "the fact that Friday's sold the store where Swan allegedly worked to franchisee Briad Restaurant Group LLC ... on December 17, 2012," as demonstrated by the publicly-available "registration filed with the City of Los Angeles Office of Finance." Defs.' Mem. 9; *see also* Decl. of Gerald L. Maatman, Jr. Ex. A (registration form printed from the City of Los Angeles's website), ECF No. 401–1.

In response, Plaintiffs argue that, under Federal Rule of Civil Procedure 15(c), their claims for unpaid overtime, FAC ¶¶ 687–94 (part of the sixteenth cause of action), uniform expenses, *id.* ¶¶ 703–09 (part of the eighteenth cause of action), unlawful deductions, *id.* ¶¶ 710–17 (part of the nineteenth cause of action), and waiting-time penalties, *id.* ¶¶ 718–24 (part of the twentieth cause of action), relate back to the First Complaint, which was filed on April 17, 2014. Plaintiffs further argue that adjudicating the statute of limitations defense is inappropriate at the motion to dismiss stage.

For the reasons stated below, the Court finds that the overtime, uniform, and unlawful deduction claims relate back to the original pleading, but that the waiting-time claim does not.

### 1. The Standard for Relation Back Under Rule 15(c)

In relevant part Rule 15(c) states that "[a]n amendment to a pleading relates back to the date of the original pleading when:"

(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

As an initial matter, it is not clear whether Rule 15(c) applies to an amendment seeking to add new plaintiffs. The plain text of Rule 15(c) addresses only the addition of new defendants; nevertheless, many courts have held that Rule 15(c) should be construed so as to permit new plaintiffs because the Advisory Committee Note states that "the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." Fed. R. Civ. P. 15 advisory committee's notes to 1966 amendment. The Second Circuit, however, has not issued a precedential opinion applying Rule 15(c) to this scenario, and the persuasive caselaw exhibits a range of approaches. *See, e.g., Charlot v. Ecolab, Inc.,* 97 F.Supp.3d 40, 56 (E.D.N.Y. 2015) (recognizing "that it is not well-settled within the Second Circuit" how to interpret Rule 15(c)(1)(C) for "amendments seeking to add plaintiffs"); *In re S. African Apartheid Litig.,* 617 F.Supp.2d 228, 290 (S.D.N.Y. 2009) (noting legal uncertainty and adopting a different standard than *Ecolab* ); *see also Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 20 (2d Cir. 1997) (discussing but not applying Rule 15(c)).

 The Court finds that the First Circuit has articulated a test that appropriately "extends by analogy" Rule 15(c) to new plaintiffs. Specifically, the First Circuit permits an amended complaint containing new plaintiffs to relate back to an original pleading when the amendment satisfies three requirements:

[T]he amended complaint must arise out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading; there must be a sufficient identity of interest between the new plaintiff, the old plaintiff, and their respective claims so that the defendants can be said to have been given fair notice of the latecomer's claim against them; and undue prejudice must be absent.

*Young v. Lepone,* 305 F.3d 1, 14 (1st Cir. 2002) (alteration in original) (quoting *Allied Int'l, Inc. v. Int'l Longshoremen's Ass'n,* 814 F.2d 32, 35–36 (1st Cir. 1987)). This three-factor test is also used in the Ninth Circuit, *see In re Syntex Corp. Sec. Litig.,* 95 F.3d 922, 935 (9th Cir. 1996), and applied in substance by district courts of at least two other circuits, *see, e.g., Sherwin Manor Nursing Ctr., Inc. v. McAuliffe,* No. 92 C 6659, 1997 WL 367368, at *6 (N.D. Ill. June 25, 1997) (discussing similar factors); *Page v. Pension Ben. Guar. Corp.,* 130 F.R.D. 510, 513 (D.D.C. 1990) (discussing similar factors). Given this consensus on the applicability of this three-

factor test, the Court adopts and applies it as follows.

### a. Conduct, Transaction, or Occurrence

■ The first element requires the new claim to arise out "of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *Young*, 305 F.3d at 14 (quoting Fed. R. Civ. P. 15(c)(1)(B)). When applying this element to the analogous scenario of new defendants, the Second Circuit has explained that "[u]nder Rule 15, the 'central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.'" *Slayton v. Am. Exp. Co.*, 460 F.3d 215, 228 (2d Cir. 2006), as amended (Oct. 3, 2006) (quoting *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir. 1999)).

Swan's overtime, uniform, and deductions claims satisfy this element as the First Complaint advances essentially the same factual allegations and theory of liability. *Compare* FAC ¶¶ 687–94 (overtime), ¶¶ 703–09 (uniform), ¶¶ 710–17 (deductions), *with* First Compl. ¶¶ 26–30, 33 (overtime), ¶¶ 34–39 (uniform), ¶¶ 45–46 (deductions). And, although the First Complaint does not identify restaurants located in California, Defendants were on notice that these allegations extended to that state, as demonstrated by the fact that Plaintiffs brought a nationwide collective action premised on the allegation that Defendants apply "the same employment policies, practices, and procedures to all tipped workers at its T.G.I. Friday's restaurants, including policies, practices, and procedures with respect to payment of ... overtime compensation, ... uniform-related expenses, and the making of unlawful deductions." First Compl. ¶¶ 79, 87, 95. Thus, these three claims arise out of the "general fact situation" alleged in the original pleading, and Defendants had "adequate notice" of these claims. *Slayton*, 460 F.3d at 228.

■ In contrast, Swan's waiting-time claim does not meet this element. FAC ¶¶ 718–24. This claim relies on facts not set out in the original pleading—Defendants' payment practices after Swan's employment ended—and invokes a legal theory not suggested by the First Complaint. *See* Pls.' Opp'n 3 (admitting that "the original complaint does not allege a waiting time claim"). The First Complaint did not provide Defendants with adequate notice of the waiting-time claim, nor does it arise from the same "conduct, transaction, or occurrence," as such, the Court finds that this claim does not relate back. *See Slayton*, 460 F.3d at 228 (reasoning that even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an "entirely distinct set" of factual allegations will not relate back). *But see Ramirez v. Ghilotti Bros. Inc.*, 941 F.Supp.2d 1197, 1208–09 (N.D. Cal. 2013) (finding that a California waiting-time claim related back to the FLSA claims alleged in an original complaint).

### b. Identity of Interest

■ The second element requires that there be a "sufficient identity of interest between the new plaintiff, the old plaintiff, and their respective claims so that the defendants can be said to have been given fair notice of the latecomer's claim against them." *Young*, 305 F.3d at 14. In applying this element, the First Circuit has cautioned that "[t]he guideposts for evaluating whether two parties possess a sufficient identity of interest to permit relation back are not well-defined." *Id.* In applying this factor, district courts have held that the fair notice can be "informal," so that this

element is satisfied when the "original complaint on its face reveals the existence of additional claimants, and possibly in combination with some conduct by plaintiffs or the defendant, justifies an inference that the new claimants were in fact 'involved' in the action." *Page*, 130 F.R.D. at 512.

The Court finds that Swan satisfies this element. The First Complaint alleged a collective action that included Swan within its scope. *See* First Compl. ¶¶ 1–2 (asserting collective action consisting of "current and former tipped workers employed at T.G.I. Friday's restaurants owned, operated, and/or controlled by Defendants"). In this sense, Swan shares the identity of the original plaintiffs, and "[D]efendants can be said to have been given fair notice of [her] claim against them." *Young*, 305 F.3d at 14; *see also Perkins v. S. New England Tel. Co.*, 07 Civ. 967, 2009 WL 3754097, at *5 (D. Conn. Nov. 4, 2009) ("Both the original Complaint and the Amended Complaint allege that [plaintiff] is asserting a collective action under FLSA on behalf of herself and a class of 'similarly situated' [employees]. Surely [the employer] was on notice that other parties might be added to the action.").

Moreover, insofar as informal notice should be considered, the Court finds that Plaintiffs' conduct during this litigation "justifies [the] inference" that Swan's claims were going to be litigated and were, in fact, already being "unofficially" litigated. *Page*, 130 F.R.D. at 512–513. Specifically, as part of the Scheduling Order, Plaintiffs stated their intention to, at the end of the opt-in period, "move to amend to add additional state law claims under Federal Rule of Civil Procedure 23 and class representatives for those claims," Scheduling Order ¶ 3, and Plaintiffs did so in a timely manner, *see* Proposed Third Am. Class Action Compl. ¶ 6 (adding Swan as a Named Plaintiff).

### c. Undue Prejudice

■ The final element requires that "undue prejudice must be absent." *Young*, 305 F.3d at 17; *see also* Fed. R. Civ. P. 15(c) (requiring "such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits"). Prejudice is "suffered by one who, for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale." *Young*, 305 F.3d at 17 (quoting *Nelson v. Cty. of Allegheny*, 60 F.3d 1010, 1014–15 (3d Cir. 1995)). "Prejudice in Rule 15 means legal prejudice, not the practical prejudice of being subject to greater awards." *In re S. African Apartheid Litig.*, 617 F.Supp.2d 228, 290 (S.D.N.Y. 2009).

Defendants' central argument is, in effect, that they will suffer undue prejudice if any of the California claims relate back. To buttress this argument, Defendants cite *Chariot v. Ecolab, Inc.*, in which the court declined to find that new state labor-law claims related back because, even if the claims were factually and legally similar to the original FLSA claims, the defendants were unduly prejudiced because "the state law standards vary such that a defendant facing multi-state claims must analyze its scope of liability under each state law separately and independently of its analysis under the FLSA." 97 F.Supp.3d 40, 55 (E.D.N.Y. 2015).

The Court declines to adopt this bright-line rule. Such a rule assumes that prejudice exists when it may be lacking. The correct approach requires a claim-by-claim examination of the potential for prejudice. To the extent that a new state claim creates a form of liability sufficiently distinct from the original nationwide FLSA—thus requiring a defendant to begin "assem-

bling evidence and constructing a defense when the case is already stale"—then undue prejudice lies. *Young*, 305 F.3d at 17. By contrast, there is no undue prejudice when the new state claim and the original nationwide FLSA claim allege substantively similar forms of liability, thus implicating the same evidence and defenses as the original pleading. *See* 6A Wright & Miller, Federal Practice & Procedure § 1501 ("As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a statute of limitations defense.").

Examining each claim separately, the Court finds that the overtime, uniform, and deductions claims will not cause undue prejudice. As discussed above, the legal and factual bases for these claims are substantively parallel to the First Complaint. Moreover, Defendants have presented no argument that any defense or evidence has become "stale," and the course of litigation has continually suggested that additional state-law claims would be raised. Indeed, when the Court considered Plaintiffs' motion to amend, it found that the task of defending against these claims created "[n]o significant additional burden" for Defendants. *Flood*, 2016 WL 3221146, at *2.

In sum, the overtime, uniform, and deductions claims satisfy the *Young* test and relate back to the date of the original filing, but the waiting-time claim does not.

### 2. The Statute of Limitations

Turning to Defendants' statute-of-limitations defense, the Court finds that it would be premature to adjudicate this issue. The "lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008). At the motion to dismiss stage, it is only appropriate to dismiss a claim on statute of limitations grounds "if a complaint clearly shows the claim is out of time." *Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999). "[N]ot only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)). "[M]atters judicially noticed by the District Court are not considered matters outside the pleadings." *Staehr*, 547 F.3d at 426.

The Court finds that, even if it were to take judicial notice of the proffered business registration, it would not grant Defendants' motion to dismiss as it does not appear "beyond doubt" that Plaintiffs "can prove no set of facts in support of [their] claim that would entitle [them] to relief." *McKenna*, 386 F.3d at 436. The registration does not, for example, foreclose the various sets of facts that might permit equitable tolling. *See, e.g., Jones v. Tracy School Dist.*, 27 Cal.3d 99, 165 Cal.Rptr. 100, 611 P.2d 441, 444–46 (1980) (applying equitable tolling to the limitations period for California Labor Code violations). The Court, therefore, does not dismiss any of Plaintiffs' California Labor Code claims. *See Staehr*, 547 F.3d at 426 ("While we have no quarrel with the District Court's decision to take judicial notice of what information was 'out there,' we do disagree with its conclusion that the total mix of information before it was sufficient to rule, as a matter of law, [that the statute of limitation forecloses the plaintiff's claim].").

## CONCLUSION

Accordingly, Defendants' motion to dismiss is GRANTED as to the New Jersey tip-pooling claim, the Connecticut uniform claim, the Michigan tip-credit claim, and the California UCL claims in the seventeenth and twentieth causes of action, and DENIES the motion with respect to the California UCL claims in the eighteenth cause of action and all of the California Labor Code claims. Plaintiffs' request for oral argument is DENIED. The Clerk of Court is directed to terminate the motion at ECF No. 399.

SO ORDERED.